Filed 6/7/13; pub. order 6/27/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHEN TROY THOMPSON, | |
| Plaintiff and Appellant, | G046759 |
| v. | (Super. Ct. No. 30-2009-00285190) |
| AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Affirmed.

Caldwell Leslie & Proctor, Robyn C. Crowther, Eric S. Pettit; Meiselman, Denlea, Packman, Berg & Eberz, Jeffrey I. Carton, Michael A. Berg and Todd S. Garber for Plaintiff and Appellant.

Manatt, Phelps & Phillips, Phillip R. Kaplan, Benjamin G. Shatz, Adrianne E. Marshack; John K. Beckley for Defendant and Respondent.

*          *          *

Plaintiff Stephen Thompson sued the Automobile Club of Southern California (the Auto Club) in this putative class action. He challenges the Auto Club's policies relating to renewal, specifically, its practice of "backdating" late renewals to the member's original expiration date if the renewal occurs within 95 days. He claims this practice results in late-renewing members receiving less than a full year of services. The Auto Club counters that the 95-day period is a "grace period" and that members are generally permitted to continue receiving services, particularly during the first 31 days. This practice, the Auto Club further argues, prevents the member from incurring a $20 fee to start a new membership.

Thompson moved for class certification, and the trial court denied the motion. The court concluded, among other things, that the proposed class was overbroad, lacked commonality, and that Thompson's claims and defenses were not typical of the class. Further, it ruled that a class action is not a superior method of adjudication. Thompson appeals the trial court's decision, arguing the court's decision was unsupported by substantial evidence, contrary to established law, and was premised on the trial court's misunderstanding of the plaintiff's claims. The Auto Club argues the class certification motion was properly denied for the reasons stated by the trial court.

Based on the deferential standard of review appropriate to a motion for class certification, we find no error. Contrary to Thompson's arguments, the court's decision reflects that it understood the facts and used appropriate criteria for its decision. Therefore, there was no abuse of discretion, and we affirm.

I

FACTS

A. *Background*

Defendant the Auto Club is a regional affiliate of AAA, an association of automobile clubs with more than 50 million members in the United States. The Auto Club is a non-profit, mutual benefit corporation and has more than six million members.

2

Its services include emergency roadside assistance, a travel agency, DMV transactions, and other benefits.

The Auto Club's membership dues are billed and collected annually. Since 2005, when joining for the first time, or when rejoining after a cancelled membership, members are generally charged a $20 enrollment fee. Upon joining, the member receives various documents, including a membership card showing the member's expiration date, and a copy of the Auto Club's bylaws. Prior to expiration of membership each year, the Auto Club mails the member several renewal notices, which vary depending on the member's level of service and billing plan. Over 100 different versions of notices exist, and they are changed periodically. The Auto Club also communicates with members regarding renewals by phone.

How the Auto Club handles membership renewals is the subject of this case. According to the Auto Club, members who fail to timely renew a membership "enjoy a 95-day grace period from the expiration date to renew." Thus, if the member renews at any point during the 95-day period, the Auto Club treats the renewal as retroactive to the date of the expiration. For example, if a member joins on January 1, 2011, the membership expires January 1, 2012. If the member renews at any time up until April 6, 2012, the renewal dates back to January 1. After the 95th day, the member's file is closed, and any new membership is subject to the $20 new membership fee.

According to the Auto Club, during the grace period, a delinquent member remains eligible to receive services. All services are available during the first 30 days after the failure to renew, and from the 31st to 95th day, whether services are provided is a matter of discretion on the part of the Auto Club agent assisting the member. Exercise of that discretion depends upon various factors, including the length of the membership, the exigency of the circumstances, and the agent's belief regarding the member's intent to renew. If a delinquent member receives roadside assistance and subsequently renews, the

3

service call is treated as one that occurred during the membership period. If the member does not renew, any such services are billed.

Plaintiff Stephen Thompson began his current membership with the Auto Club in December 2002. His membership expiration date since that time has been December 6 of each year. Between 2005 and 2008, Thompson renewed his membership late, although he intended to renew each year.

The complaint in this action discusses only the renewals for the years 2006 and 2007. There was, however, evidence in the record regarding his 2008 renewal. Shortly after his membership expired in 2008, he received a mailed notice from the Auto Club informing him that his membership had not been renewed. The notice stated: "We will still continue to provide you with Roadside Assistance service for 30 days after your expiration date. However, if we do not receive your payment, we will be required to bill you for an amount that covers our cost of providing you the service during that 30-day period. If you renew now, all Roadside Assistance calls during the unpaid period will be counted toward your four free calls."

In early 2009, Thompson renewed his membership by phone. At the end of the call, he specifically asked the representative if his membership started "right now and goes for 12 months forward." Thompson was informed that the membership could only be started from that date if he paid a $20 new membership fee, otherwise it went back to the date of the expiration. Thompson felt that was not fair, but he chose not to begin a new membership.

B. *The Lawsuit*

In July 2009, Thompson filed the instant lawsuit as a purported class action, alleging claims for breach of contract, unjust enrichment, and violations of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (the UCL) and the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.) (the CLRA). He also sought injunctive relief.

4

After a demurrer was sustained, the injunctive relief cause of action was dropped in the amended complaint. In sum, Thompson alleged that the Auto Club's renewal policy was depriving late-renewing members of receiving 12 months of benefits, that members were not informed of the policy, and that late-renewing members were being monetarily damaged.

Discovery proceeded, and in November 2011, Thompson moved for class certification. He proposed to define the class as: "All persons who, at any time on or after July 17, 2005, purchased and paid for a new term of [Auto Club] membership after their prior membership term expired, and whose new membership term was deemed by [Auto Club] to have begun on or about the prior expiration date." The Auto Club filed its own motion to deny certification. The parties filed their respective oppositions and replies in due course. Both sides also submitted evidence, which we will discuss in more detail below, to support their respective claims. Evidentiary objections were also filed.

After a hearing, the court denied the motion and directed the Auto Club to prepare an order. Thompson objected to the Auto Club's proposed order and submitted his own, but the court signed the Auto Club's order. The court concluded that Thompson had failed to present sufficient evidence to demonstrate a well-defined community of interest. "Plaintiff has failed to support his allegation that the Auto Club routinely denies members who renew late a full twelve months of benefits by 'backdating' membership renewals, or that this issue could be litigated on a class-wide basis. By contrast, the Auto Club has demonstrated that individual issues would predominate in determining the claims alleged in this action, that the proposed class is overbroad, that Plaintiff is not typical of the class he seeks to represent, and that a class action would not be a superior method of litigating these claims." Given the court's ruling, it was unnecessary to decide the Auto Club's motion to deny certification, but the court had considered all the evidence and briefs on each motion. The court also overruled all evidentiary objections. Thompson now appeals the court's order.

II

DISCUSSION

*A. Standard of Review*

With respect to the factual issues surrounding class certification, we afford the trial court "'great discretion in granting or denying certification.'" (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311.) The trial court's ruling will be reversed only if a "'manifest abuse of discretion'" is present. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022.) "'A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]' [Citations.]" (*Ibid.*)

"We must '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .' [Citation.]" (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1022.) "'Where a certification order turns on inferences to be drawn from the facts, "'the reviewing court has no authority to substitute its decision for that of the trial court.'"' [Citation.]" (*Davis-Miller v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 106, 120.) "[B]ecause group action also has the potential to create injustice, trial courts are required to '"carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts."' [Citations.]" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435.)

We must also examine the trial court's stated reasons for denying class certification. (*Linder v. Thrifty Oil Co.*, *supra*, 23 Cal.4th at p. 436.) "Ordinarily, appellate review is not concerned with the trial court's reasoning but only with whether the result was correct or incorrect. [Citation.] But on appeal from the denial of class certification, we review the reasons given by the trial court for denial of class certification, and ignore any unexpressed grounds that might support denial. [Citation.] We may not reverse, however, simply because *some* of the court's reasoning was faulty,

6

so long as *any* of the stated reasons are sufficient to justify the order. [Citation.]" (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 843-844.) Any valid, pertinent reason will be sufficient to uphold the trial court's order. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326-327.)

It is worth highlighting the proper role of the appellate court because Thompson's briefs rely heavily on federal trial court rulings, including several that involve similar cases against other AAA affiliates. These mostly unpublished and out-of-state orders obviously have no binding precedential effect on this court. Further, their ability to provide useful guidance[1] is somewhat limited because we do not stand in the trial court's place. Our review is "narrowly circumscribed." (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th 1004 at p. 1022.) "Our task on appeal is not to determine in the first instance whether the requested class is appropriate but rather whether the trial court has abused its discretion in denying certification." (*Osborne v. Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 654.)

Thus, each of the trial court decisions Thompson cites may be correct, and if we were reviewing them, they might well be affirmed. But it does not necessarily follow that because the trial court in this case viewed the facts or legal issues differently than another trial court, an abuse of discretion occurred. The "great discretion" (*In re Tobacco II Cases*, *supra*, 46 Cal.4th at p. 311) trial courts are accorded in the matter of class certification almost guarantees that such differences of opinion between trial courts will occur and are entirely permissible. The questions before us are limited to whether the decision was supported by substantial evidence, and whether the decision was based on improper criteria or erroneous legal assumptions. (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th 1004 at p. 1022.)

---

[1] "'"California courts may look to federal authority for guidance on matters involving class action procedures." [Citations.]' [Citation.]" (*Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th 1380, 1392, fn. 18.)

7

*B. Relevant Statutory Frameworks*

Thompson's complaint alleges causes of action for breach of contract, unjust enrichment, and violations of the UCL and CLRA. While the first three claims are analyzed under the same statutory framework for determining whether a class action is appropriate, the CLRA sets forth a slightly different standard.

Code of Civil Procedure section 382 sets forth the general requirements for certifying class actions. Thus, it applies to Thompson's common law claims, and also to class actions under the UCL. (*In re Tobacco II Cases*, *supra*, 46 Cal.4th at pp. 312-313.) A class action is authorized when "'the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court.'" The party seeking class certification must establish the existence of both an ascertainable class and a well-defined community of interest among the class members. (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913; *Linder v. Thrifty Oil Co.*, *supra*, 23 Cal.4th at p. 435; *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470.) The community of interest requirement involves three factors: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond v. Dart Industries, Inc.*, *supra*, 29 Cal.3d at p. 470.) An additional criteria of the "superiority" of the class action procedure is also sometimes considered. (*Sav-On Drug Stores, Inc. v. Superior Court*, *supra*, 34 Cal.4th at p. 332.)

The CLRA enables a consumer to bring a class action on behalf of himself or herself and other consumers similarly situated if the consumer has suffered "any damage" from the use of any of 23 enumerated acts or practices. (Civ. Code., §§ 1780, subd. (a), 1781, subd. (a).) The CLRA has its own class action requirements pursuant to Civil Code section 1781, subdivision (b): 1) the impracticability of bringing all members of the class before the court; (2) questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual

8

members; (3) the claims of the class representative are typical of the class; (4) the class representatives will fairly and adequately protect the interests of the class. (Civ. Code, § 1781, subd. (b).)

The statutory requirements are substantial similar.[2]  Each requires the potential class to be sufficiently numerous as to make individual adjudication impractical, although the CLRA does not explicitly require an ascertainable class.  Code of Civil Procedure section 382's "well-defined community of interest" requirements are, for all practical purposes, the same as the CLRA's final three requirements:  the predominance of common issues of law or fact, the typicality of the class representative's claims, and the adequacy of the class representative.  The questions of a sufficiently large class and the representative's adequacy are not at issue here.  We therefore analyze the remaining requirements of the statutes simultaneously, with the exception of the "superiority" question, which applies only under Code of Civil Procedure section 382.

## C.  Ascertainable Class

Whether a class is "ascertainable" within the meaning of section 382 "is determined by examining (1) the class definition, (2) the size of the class, and (3) the means available for identifying the class members.  [Citations.]"  (*Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1271.)  "'"Class members are 'ascertainable' where they may be readily identified without unreasonable expense or time by reference to official records.  [Citation.]"'  [Citation.]  In determining whether a class is ascertainable, the trial court examines the class definition, the size of the class and the

---

[2] One key difference between Code of Civil Procedure section 382 and the CLRA is that under the CLRA, if all the requirements are satisfied, the court must certify the class. (Civ. Code, § 1781, subd. (b); see *Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 135-136.)  "The trial court, however, has 'considerable latitude' under those four conditions in deciding whether a class action is proper.  [Citation.]" (*Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145, 153.)

means of identifying class members.  [Citation.]" (*Lee v. Dynamex, Inc.* (2008) 166 Cal.App.4th 1325, 1334.)

Ascertainability also addresses the breadth of the class.  "Courts have recognized that 'class certification can be denied for lack of ascertainability when the proposed definition is overbroad and the plaintiff offers no means by which only those class members who have claims can be identified from those who should not be included in the class.'  [Citation.]" (*Sevidal v. Target Corp.* (2010) 189 Cal.App.4th 905, 921.)

The court's order denying certification noted the following with respect to the ascertainability of the class:  "The putative class is not ascertainable on any of Plaintiff's causes of action.  The Auto Club has presented evidence demonstrating that the proposed class is substantially overbroad in that it contains Auto Club members who would not be entitled to relief from the Auto Club on any of Plaintiff's causes of action because the members (i) received services during their delinquency . . . (ii) had the Auto Club's renewal policy explicitly disclosed to them . . . and/or (iii) were not injured by the Auto Club's renewal practices because they were economically better off under the Auto Club's system of renewal than they would have been if they had begun new memberships on the date of payment and paid the $20 new membership fee . . . ."  The court cited to evidence on each point.

Thompson argues the court's ruling on this point is flawed because it misapprehends the nature of his claims and "flies in the face of the evidence and violates established law, which holds that a corporate defendant's shoddy record-keeping does not prevent class certification."  In Thompson's view, determining who the class members are is simple — he believes that any member who renewed after the prior year's expiration date should be a member, regardless of whether the member received services during the delinquency period, received a disclosure regarding how the Auto Club handled renewals, or paid less than they would have by beginning a new membership and incurring the $20 new membership fee.  Such members are ascertainable and relevant

10

information was produced by the Auto Club. It is unclear, however, under what theory many of these individuals would be eligible to recover.

With respect to breach of contract, the amended complaint alleges the Auto Club "breached the contract . . . by providing Plaintiff with less than 12 months of membership benefits . . . in exchange for his payment of the full annual membership fee." The complaint also alleges damages from this breach. Thompson also alleges that providing less than 12 months of membership benefits and charging membership fees for time periods where no membership privileges are provided, as well as failing to disclose its renewal practices, is unlawful, unfair or fraudulent under the UCL. Essentially the same factual allegations are made regarding the CLRA and unjust enrichment causes of action.

If putative class members either received benefits during the delinquency period, were not damaged as a result of the renewal policy, or renewed after the Auto Club's membership policy was disclosed, their ability to recover is called into serious question. If class members received benefits during the delinquency period or they were told about the Auto Club's renewal practices, they cannot maintain a cause of action under the UCL. If they were not economically damaged, they cannot recover on a breach of contract, under the CLRA, or through an unjust enrichment claim. (See Civ. Code., § 1780, subd. (a); *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388; *Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 726.)

There was substantial evidence that such conditions apply to a significant part of the putative class. The Auto Club produced a spreadsheet of over 6,000 pages of records showing members who received benefits during the delinquency period during the past year. Evidence was also presented that between 67 and 80 percent of delinquent members renew during the first 30 days after expiration. For a member to incur damage, the supposed lost value of their membership would have to exceed $20, the amount the member would be required to begin a new membership rather than a renewal. The

11

average membership renewal, however, is $87. Thus, the monetary value of an average Auto Club membership (87 divided by 365) is 24 cents per day. Only individuals paying the average membership fee who renewed after the 84th day of the 95-day delinquency period would have damages exceeding $20. To exceed $20 within the 30-day period during which most members renewed, their membership renewal would have been $243 or more. Less than 10 percent of Auto Club members pay such fees.

With respect to disclosure, the Auto Club also produced evidence that it trains customer service agents to discuss renewal practices when appropriate. There was also evidence, in the form of customer declarations, that agents actually do so. Agents do not generally make notes on the customer's file when calls are received regarding routine issues. Further, Thompson himself testified that during his 2009 renewal call, the agent discussed the Auto Club's renewal practices with him. Thus, it was reasonable for the court to infer that at least some percentage of the putative class knew about the renewal practice.

These facts present significant overbreadth and ascertainability problems. It is clear from the evidence that Thompson's proposed class is not only slightly overinclusive, but substantially so. The proposed class includes everyone who renewed late after July 17, 2005, regardless of any other facts. Given that a significant number of these people would have no right to recover, the class is overbroad.

Further, there is no evidence that the Auto Club can ascertain which putative class members to whom the following does not apply: 1) they received no services during their delinquency periods, 2) they renewed on a date where renewing their membership was more expensive, on a pro rata basis, than paying the $20 new membership fee, and 3) they were unaware of the renewal policy.

Thompson claims this amounts to "shoddy record-keeping" but he points to no authority that would require the Auto Club to keep such records. Thus, his claim that the trial court applied the wrong legal standard on this point is without merit. The

12

evidence demonstrates the trial court properly exercised its discretion when it concluded the proposed class was not ascertainable.

### D.  Predominance of Common Questions of Law and Fact

"The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.]  The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' [Citation.]  A court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible.  'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' [Citations.]  (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at pp. 1021-1022, fn.omitted.)  "Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence. [Citation.]"  (*Id.* at p. 1022.)

The trial court found that individual issues predominate:  "(A) Individual issues predominate regarding whether a putative class member is entitled to recover on any of Plaintiff's causes of action.  This is because, as stated above, there were members who suffered no injury because they (i) received services during their delinquency, (ii) had the Auto Club's renewal policy explicitly disclosed to them, and/or (iii) were economically better off under the Auto Club's system of renewal than they would have been if they had begun new memberships on the date of payment and paid the $20 new enrollment fee.  Determining whether a member falls into any of these categories and

13

would therefore not be entitled to recover from the Auto Club on any of Plaintiff's theories of liability, can only be done on a case-by-case basis." The court went on to explain that essentially the same reasons applied to each cause of action.

These are essentially the same issues that were highlighted during our ascertainability discussion above, but they are equally important here. Thompson argues that because the same contract terms and renewal policy applied to all members, common issues predominate. He also informs us, citing an array of district court decisions, that an "overwhelming" majority of federal court cases have certified classes based on standard contracts. Thus, he asserts class treatment was appropriate for the breach of contract claim.

Thompson argues that determining the issues of breach and damages can be decided on a classwide basis, but accepting that argument depends on accepting his theory of the case — that *any* expiration less than 365 days after a renewal was a breach of contract and necessarily caused damages. But the facts appear to belie this. There was evidence presented to the trial court on a number of relevant issues, including the availability of services to delinquent members and the use of those services. There was also evidence, as we discussed above, that many members would have paid more if they had spent the additional $20 to start a new membership from the date of payment and issues regarding whether the renewal policy was disclosed. These are not merely issues relating to the measure of damages, but as to whether any possible recovery exists. Thus, the mere existence of a form contract is insufficient to determine that common issues predominate when the questions of breach and damage are essentially individual. (*Wilens v. TD Waterhouse Group, Inc.* (2003) 120 Cal.App.4th 746, 756.)

Such individual assessments would clearly be required here, and would undermine any benefits of class treatment. Proof with respect to each individual class member would be needed to determine what benefits, if any, were received during the delinquency period, whether the renewal practice saved each class member money over

14

paying the $20 new member fee, and whether the member was aware of the renewal policy. The same issues apply to all of Thompson's claims, including whether the renewal practices were unfair or fraudulent under the UCL, caused damage under the CLRA,[3] or resulted in the Auto Club's unjust enrichment. Thus, we find the trial court had substantial evidence from which it could conclude that individual issues predominated over common ones.

## E. Typicality of the Claims

Part of the "community of interest" requirement for class certification is a showing that the plaintiff's claims are typical of the class. (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104.) The trial court held: "Plaintiff is not typical of the class he purports to represent. The Auto Club has demonstrated that Plaintiff is not similarly situated to putative class members because the Auto Club's renewal practice was explicitly disclosed to him and he elected to renew his membership pursuant to the practice rather than begin a new membership on his payment date. . . . He is also not typical of the purported class because Plaintiff's decision to renew his membership after being explicitly told about the Auto Club's renewal practice (i.e. not to alter his position and renew as he had done on three prior occasions when he claims he was unaware of the practice) demonstrates that this information was not material to him, as Plaintiff alleges it *would* be to the reasonable class member."

This issue does not seem to be as important here as the questions of ascertainability and predominance, but in any event, Thompson has failed to show an abuse of discretion. He focuses on his 2005 (for the 2006 year) and 2007 renewals, for which he alleges he received no disclosure, selectively ignoring the year he did receive such a disclosure and chose to proceed anyway. But as the trial court noted, this seriously calls in doubt whether the disclosure was material or would have been material

---

[3] Because actual damages are required under the CLRA (Civ. Code, § 1780, subd. (a)) we need not examine the additional issues of causation and reliance.

15

in the earlier years. This is substantial evidence from which the court could conclude Thompson's claims were not typical, and we find no abuse of discretion.

## F. *Superiority of the Class Action Procedure*

The superiority criterion requires the moving party to establish "'by a preponderance of the evidence that the class action proceeding is *superior* to alternate means for a fair and efficient adjudication of the litigation.'" (*Sav-On Drug Stores, Inc. v. Superior Court*, *supra*, 34 Cal.4th at p. 332, italics added.) The trial court concluded that "A class action is not a superior means to adjudicate this case. The Auto Club has demonstrated that individual inquiries would predominate on the question of whether the renewal practice was adequately disclosed to each class member; whether each class member sought and received service during the class period; whether individual class members who did not seek services during the class period were nonetheless aware that services were available; and whether individual class members suffered any injury as result of the Auto Club's renewal policy. The predominance of these individual issues makes the class action mechanism unmanageable in this case. Although the size of each individual's claim is small, the burdens imposed in adjudicating those claims on a class basis do not support the finding that a class action is warranted here."

We need not belabor this point — even if Thompson could establish the superiority of the class action method, he failed to meet the statutory requirements for certification under Code of Civil Procedure section 382 and the CLRA. Superiority alone is insufficient, and the court therefore properly exercised its discretion when it denied class certification.

16

### III

### DISPOSITION

The order is affirmed.  The Auto Club is entitled to its costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

Filed 6/27/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHEN TROY THOMPSON, | |
| Plaintiff and Appellant, | G046759 |
| v. | (Super. Ct. No. 30-2019-00285190) |
| AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, | ORDER GRANTING REQUEST FOR PUBLICATION; NO CHANGE IN JUDGMENT |
| Defendant and Respondent. | |

Respondent has requested that our opinion, filed on June 7, 2013, be certified for publication. We have also received publication requests from the Association of Southern California Defense Counsel and Payne & Fears LLP. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.

IKOLA, J.