Filed 11/12/13  Wright v. Menzies Aviation CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SARA WRIGHT,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>MENZIES AVIATION, INC. et al.,<br><br>      Defendants and Respondents. | B244332<br>(Los Angeles County<br>Super. Ct. No. BC441308) |

APPEAL from an order of the Superior Court of Los Angeles, Debre K. Weintraub, Judge.  Affirmed.

GrahamHollis, Graham S.P. Hollis and Vilmarie Cordero for Plaintiff and Appellant.

Foley & Lardner, John G. Yslas and Christopher G. Ward for Defendants and Respondents.

Appellant Sara Wright appeals the trial court's denial of her motion seeking certification of certain classes in her action against respondents Menzies Aviation Inc., Menzies Aviation Group (USA), Inc., and Aeroground, Inc. (collectively "Menzies"), her former employer. Appellant moved to certify four distinct classes encompassing current and former nonexempt (hourly) employees of Menzies whom she contended suffered various employment-related injuries. Appellant contends the trial court abused its discretion in denying certification of three of the four proposed classes.[1] Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Complaint*

Appellant, a nonexempt hourly employee, filed a complaint against Menzies alleging that it had violated various provisions of the Labor Code during her employment, resulting in payment of inadequate compensation, and that it had issued defective itemized wage statements.[2] She sought to represent different classes of similarly situated nonexempt current and former employees, including individuals employed since July 2006 who were paid on an hourly basis and clocked in and out every work day. According to the operative first amended complaint (FAC), some of the employees appellant sought to represent worked at LAX's cargo warehouses located along Imperial Highway and Century Boulevard,

---

[1] Appellant also sought to certify a class of employees whose overtime was allegedly improperly calculated because their shifts extended beyond midnight. The court certified that class, and nothing pertaining to that class is at issue in this appeal.

[2] Menzies was described as a "global aviation support company[y] based in the United Kingdom that provide[d] ground-handling, cargo handling, aircraft maintenance, and aviation-related services" at Los Angeles International Airport (LAX).

and others worked at the LAX passenger terminals. The FAC asserted some claims that pertained only to the employees working at the passenger terminals.[3]

With respect to the broader class, the FAC alleged that all Menzies's nonexempt employees were subject to a policy under which pay was computed based not on the exact time each employee clocked in and out, but on their clock-in and clock-out time rounded up or down to the nearest quarter hour. The FAC alleged that this policy, when combined with Menzies's policy of disciplining employees who arrived more than five minutes late for a shift, resulted in a timekeeping system that consistently operated in Menzies's favor. The FAC further alleged that Menzies did not provide any of its nonexempt employees accurate itemized wage statements as required by Labor Code section 226, as the wage statements did not contain the beginning date of the pay period.

With respect to the employees working at the passenger terminals, the FAC alleged that the only parking lot available for these employees to leave their cars was a remote one, served by a shuttle. The employees who worked in the passenger terminals were also required to clear airport security prior to beginning a shift. According to the FAC, these employees were not paid for their time waiting for or riding on the shuttles, or the time spent going through security inspections and walking from the security area to the clock-in area.

B. *Motion for Class Certification*

In June 2012, appellant filed a motion to certify the three classes at issue.[4] To support numerosity, appellant presented evidence that respondents then

---

[3]   Appellant herself worked in the passenger terminals as a cabin cleaner, cabin cleaner lead and cabin cleaner supervisor.

[4]   In January 2012, Menzies's motion for summary judgment had been denied by the court.

employed at least 1,100 nonexempt employees at LAX, approximately 671 or 61 percent of whom worked in the passenger terminals. Appellant further established that the list provided by Menzies to the third party administrator for the mailing of opt-out notices contained 3,688 individuals. In addition, appellant presented the following evidence pertinent to particular classes.

### 1. *Evidence Pertinent to Rounding Class*

The "rounding class" appellant sought to certify consisted of: "All current and former hourly non-exempt employees of [Menzies] who have worked at [LAX] at any point from July 15, 2006 to the present and who according to [Menzies's] time clock records were not paid for all hours worked due to [Menzies's] policy of rounding the time recorded on their time clock system to quarter hour intervals."

Appellant presented evidence concerning the rounding system Menzies used to calculate wages, establishing that hourly employees who clocked in up to seven minutes after an hour or quarter hour were paid as if they had clocked in earlier (the preceding hour or quarter hour); employees who clocked in after that break point were paid as if they arrived the following quarter hour. The same applied when the employees left work: an employee could clock out up to seven minutes before or seven minutes after the hour or quarter hour and be paid the same as employee who clocked out precisely on the hour or quarter hour. The rounding system also applied when hourly employees clocked in and out for breaks.[5]

---

[5]     In respondents' brief, Menzies provides the following examples of how its rounding system works: "[I]f an employee punch[ed] in for a shift at 7:54 a.m., the punch round[ed] to 8:00 a.m., and if he punch[ed] out at 11:06 a.m., the punch round[ed] to 11:00 a.m. [Citation.] However, if an employee punch[ed] in at 7:52 a.m., the punch round[ed] to 7:45 a.m., and if he punch[ed] out at 11:08 a.m., the punch round[ed] to 11:15 a.m. [Citation.]"

Appellant also presented evidence that respondents' tardiness policy stated that any nonexempt employee was considered late if he or she reported to work more than five minutes after the start of the scheduled shift. The accumulation of 12 "tardies" in a 12-month period could result in termination.[6]

In support of its contention that the policies resulted in a timekeeping system operating in Menzies's favor, appellant presented evidence concerning wage and hour records for 19 putative class employees. For each of these 19 employees, appellant summarized a week between 2006 and 2008 in which the rounding system resulted in the employee being clocked in for periods ranging from 31 to 67 minutes more than was used to calculate his or her pay. Appellant contended that this evidence supported a claim against Menzies based on the theory that a rounding policy is lawful only if at the end of each distinct pay period, the employee has paid the employee for all hours worked during that pay period. Appellant indicated that for the purposes of its legal theory, the fact that the compensation might average out over time was irrelevant.

### 2. *Evidence Pertinent to Passenger Terminal Employee Class*

With respect to passenger terminal employees, appellant sought to certify a class consisting of: "All current and former hourly non-exempt employees of [Menzies] who have worked at the LAX Passenger Terminal Areas at any time from July 15, 2006 to the present."

Appellant presented evidence indicating that she and a number of other putative class members who worked in the passenger terminals parked in LAX employee lots or private parking lots, all located at a distance from the passenger terminals. Appellant and the employees who parked in those remote lots took

---

[6]    Appellant contended that as a result of Menzies's tardy policy, its employees "show up for work early." Appellant cited no evidence to support that allegation.

5

shuttles to and from the passenger terminals to arrive at and depart from work.[7] Appellant also presented evidence that some employees who took public transportation were dropped off near a shuttle stop and took a shuttle the rest of the way in. The evidence indicated that the only parking option for automobiles close to work stations in the passenger terminals was expensive.[8]

To support her contentions relating to the claim that passenger terminal employees should be paid for time spent waiting for or riding on shuttles, appellant also submitted copies of 31 employee declarations which had been filed by Menzies in conjunction with its earlier motion for summary judgment. These employees all stated that they were free to choose the manner in which they transported themselves to work and that they elected a variety of methods, including (1) parking in various LAX employee lots or nearby private lots and taking a shuttle or van to the passenger terminals; (2) parking on the street and taking a parking lot shuttle to the passenger terminals; (3) taking public transportation; (4) traveling by motorcycle and parking in a special lot for motorcycles located near the passenger terminals; or (5) getting dropped off at the passenger terminals by family or friends. Appellant summarized these declarations and pointed out that all but a handful of these employees parked in remote lots and used shuttles to get the rest of the way in, that one of the motorcycle riders did the same in bad weather, and that the few who stated they used public transportation did not state whether they used shuttles to travel between the drop off point and

---

[7]     Appellant and putative class member Adrian Antoine estimated that it would have taken an hour to walk from one of those lots to the passenger terminal where they worked. Appellant further pointed out that oftentimes she would have been required to walk that distance in the dark or early morning hours.

[8]     Appellant stated the cost would have been $30 per day or $720 per month.

their work stations.[9]  Appellant contended the evidence presented established a "de facto" requirement that passenger terminal employees park in remote lots and take a shuttle to work.

With respect to the contention that the passenger terminal employee class should also include a claim for time spent clearing security, appellant contended: "Menzies employment manual requires all Menzies non-exempt employees working at the LAX Passenger Terminal Area to comply with a variety of security measures and procedures, including waiting to pass through a security check point. Menzies uniformly requires all non-exempt employees to follow airport security regulations and to work with the airport authorities and abide by the security measures imposed by the Airport security authorities.  Menzies non-exempt employees working at the LAX cargo warehouses do not have to wait in line or go through a LAX security check point before they can clock in for their shifts. Menzies ha[s] the same policy and practice of compensating Menzies non-exempt employees working at the LAX Passenger Terminal Areas only after they have clocked in for their shifts, and do[es] not compensate them for the time spent waiting to pass through the security check point."  There was no citation to any evidence, and appellant did not otherwise discuss this claim in its moving papers or its reply.


3. *Evidence Pertinent to Wage Statement Class*

With respect to the wage statement claim, appellant sought to certify a class consisting of "All hourly non-exempt employees of [Menzies] who have worked at

---

[9]     Evidence submitted by Menzies indicated that several municipal bus lines stopped approximately one block from the passenger terminal area and that the LAX "Flyaway Bus" made several stops in the terminal area.  None of the employee declarations stated that they used one of those options.

7

[LAX] at any point from July 15, 2006 to the present." Appellant presented evidence that the wage statements Menzies issued to its employees during the relevant period contained the date the check was issued, the date the wage period ended, and the frequency of the pay period (e.g., "weekly," "bi-weekly"), but did not expressly state the date the wage period began. Determining the start date from the information provided would have required the assistance of a calendar.

### 4. *Menzies's Opposition*

Menzies's opposition to the class certification motion pointed out various alleged shortcomings in appellant's supporting evidence: (1) appellant had provided no evidence of how the rounding policy affected average employee compensation over time; (2) the weeks selected by appellant to support her claim that employees sometimes lost compensation in the short run included days in which employees were overcompensated; (3) appellant had presented no evidence of a practice or policy imposed by Menzies forcing potential passenger terminal employee class members to travel on an LAX shuttle, and indeed the evidence she presented established that passenger terminal employees used a variety of means to travel to and from work; (4) the evidence appellant submitted to demonstrate that the security clearance requirement was imposed on passenger terminal employees by Menzies established instead that the requirement derived from airport security regulations and federal law; and (5) appellant had presented no evidence of injury to herself or other putative class members as a result of receiving allegedly deficient wage statements.

### 5. *Trial Court's Ruling*

In an oral ruling, the trial court found that the factors of ascertainability, numerosity, typicality, and adequacy were satisfied. The court further found that

8

appellant was an adequate class representative and typical of the proposed classes, and that the attorneys representing appellant were qualified to act as class counsel. After granting class certification as to one class, the court denied class certification for the three classes at issue in this appeal, finding that common questions did not predominate.

The court first articulated the standard to be applied to that determination: "[T]he trial court's obligation in analyzing commonality is to determine whether the elements necessary to establish liability are susceptible of common [proof]. . . . [W]hat matters to class certification is not the raising of common questions but rather the capacity of class-wide proceeding[s] to generate common answers apt to drive the resolution of the litigation."

With respect to the rounding class, the court found that the evidence demonstrated Menzies's rounding policy was applied uniformly to all nonexempt employees and involved rounding each time clock punch to the nearest quarter hour. It also found clear evidence that under Menzies's tardy policy, nonexempt employees who report to work more than five minutes after the start of a shift are deemed late or tardy, and that 12 tardies in a consecutive 12-month period was a ground for termination. However, the court found that appellant had not met her burden of establishing that class claims would predominate. First, the court pointed out that the evidence established the rounding policy was neutral on its face -- employees were paid less if they clocked in a few minutes late, but the time would be made up if they left a few minutes late. With respect to the evidence presented that certain putative class members were not paid for all time clocked in during particular weeks, the court stated: "This evidence . . . does not indicate the existence of a class-wide rounding policy that favors [Menzies]. At most, it shows that during certain pay periods some class members were not paid for all their time." Second, responding to appellant's argument that the tardy policy tipped the

9

balance in favor of Menzies "because class members will typically clock in a few minutes earlier to avoid being tardy," the court noted that appellant presented "no evidence that any class member felt compelled to clock in early due to the tardiness policy" and found that "without evidence to the contrary, it must be assumed that how any particular class member reacted to the tardiness policy [was] highly individualized."

The court concluded that since there was no evidence that the rounding policy was "designed or implemented in a manner that favored [Menzies], each class member's time records would have to be examined individually to determine whether any particular class member lost wages." This was "an inherently individualized analysis" and "an examination of the time records for every one of the [class members'] pay periods during the class period is not manageable." The court concluded that "although [appellant] alleges that the rounding policy and tardiness policy impacted the class members such that the rounded times benefitted [Menzies] over time, there's no evidence of this in either written policy or its implementation. As there's no evidence of a class-wide rounding policy and practice that benefitted [Menzies] over time, numerous individual questions arise such as how did each class member react to the tardiness policy and did any class member's overtime have more time subtracted than added to the hours they worked? Based on these individualized inquiries, common questions do not predominate the rounding policy claim."

With respect to compensating passenger terminal employees for commute or shuttle time, the court found that although appellant's evidence indicated that putative class members parked in lots some distance from the passenger terminals, there was no policy enacted by Menzies dictating the means by which they arrived at work. To the extent appellant contended there was no "practical alternative" to parking in a remote lot and riding a shuttle, there was no legal authority for the

10

proposition that such commute time was compensable. "The main element necessary to establish liability is [the] defendants' control over the manner and means by which the class members commuted to work. [¶] . . . The question of [Menzies's] control over the manner and means by which class members commuted to work has not been shown to be susceptible to common proof if there's no evidence of a class-wide policy or practice implemented by [Menzies] that controlled class members' commute."

With respect to compensating passenger terminal employees for security clearance time, the court noted that the class certification motion "address[ed] this theory in a single paragraph [which did] not offer evidentiary or other citation." The court found that the security procedures followed were "dictated by federal aviation law" and not Menzies's policy, and that Menzies had "no authority to change the security procedures set forth under the federal law." Appellant had provided no evidence "that [Menzies] had a policy exercising control over the class members while they were in airport security line" or of a requirement by Menzies that its employees go through airport security, "which is entirely a creature of federal law." As appellant had provided no evidence of "a policy implemented by [Menzies] that is unlawful and resulted in damages to the class members," the court found appellant had "not shown that common questions dominate this theory of liability."

Finally with respect to the failure to include the beginning date of the pay period on itemized wage statements, the court found that appellant had not provided any evidence that any putative class members were injured by the omitted information. "Without evidence that the class member[s] suffered any injury, there's no evidence that the omission in the itemized statements violates the law. Whether the omission injured any class members in particular will have to be examined on an individualized basis. Common questions do not predominate

11

[under] this theory." The court order denying certification of the three classes at issue in this appeal was filed July 19, 2012. This appeal followed.[10]

## DISCUSSION

A. *General Principles and Standard of Review*

"Drawing on the language of Code of Civil Procedure section 382 and federal precedent," the Supreme Court has "articulated clear requirements for the certification of a class": "The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.]" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).) The ""community of interest"" requirement ""embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."" (*Ibid.*) Where the issue is whether individual questions or questions of common or general interest predominate, the issue is "whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.]" (*Ibid.*) "The answer hinges on 'whether the theory of

---

[10]  Under the ""death knell"" doctrine, orders denying class certification are immediately appealable where the appealed-from order was the practical equivalent of a final judgment for some parties and a future appeal would be likely foreclosed. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 754, 757.) As only those employees who work shifts that extend to after midnight are covered by the class certified by the court, the order was the practical equivalent of a final judgment for a significant number of potential class members.

12

recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.'  [Citation.]"  (*Ibid*.)

"The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members."  (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326.)  This burden is "not merely to show that some common issues exist, but, rather, to place substantial evidence in the record that common issues *predominate*."  (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1108.)

A trial court is required to "examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible."  (*Brinker*, *supra*, 53 Cal.4th at pp. 1021-1022.)  Our review is more circumscribed:  "'"Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification."  [Citation.]  A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.  [Citations.]'"  (*Id*. at p. 1022.)  Whether individual or common questions predominate "is a factual question; accordingly, the trial court's finding that common issues [do or do not] predominate generally is reviewed for substantial evidence," and we must presume in favor of the court's order "'"the existence of every fact the trial court could reasonably deduce from the record . . . ."'"  (*Ibid*.)

"Ordinarily, appellate review is not concerned with the trial court's reasoning but only with whether the result was correct or incorrect.  [Citation.]  But on appeal from the denial of class certification, we review the reasons given by

the trial court for denial of class certification, and ignore any unexpressed grounds that might support denial. [Citation.] We may not reverse, however, simply because some of the court's reasoning was faulty, so long as any of the stated reasons are sufficient to justify the order." (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 843-844, italics omitted; accord, *Thompson v. Automobile Club of Southern California* (2013) 217 Cal.App.4th 719, 726.) "Any valid pertinent reason will be sufficient to uphold the trial court's order." (*Thompson v. Automobile Club of Southern California*, *supra*, at p. 726.)

### B. *Rounding Class*

Federal regulation has long permitted the practice of "recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour," as long as the "arrangement averages out so that the employees are fully compensated for all the time they actually work" and the practice is not used to avoid compensating the employees properly "for all the time they have actually worked." (29 C.F.R. § 785.48(b).) As interpreted by the courts, this regulation "permits employers to use a rounding policy for recording and compensating employee time as long as the employer's rounding policy does not 'consistently result[] in a failure to pay employees for time worked." (*Alonzo v. Maximus, Inc.* (C.D. Cal. 2011) 832 F.Supp.2d 1122, 1126, and cases cited therein.) "[A]n employer's rounding practices comply with [the regulation] if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment." (*Ibid.*) California's Division of Labor Standard Enforcement (DLSE) adopted the federal regulation in its Enforcement Policies and Interpretations Manual. In *See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 902 (*See's Candy*), the court concluded, based on the federal regulation and its adoption by DLSE, that "the rule

14

in California is that an employer is entitled to use [a typical] rounding policy if the rounding policy is fair and neutral on its face and 'it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.'" (210 Cal.App.4th at p. 907, quoting 29 C.F.R. § 785.48(b).)[11]

The court in *See's Candy* discussed the manner in which a party could establish the fairness or unfairness of a rounding policy for purposes of determining its lawfulness. Both parties sought to rely on the analysis of an economist and statistician, who analyzed employees records over a four-and-a-half-year period and found that the practice resulted in overcompensation of employees as a whole, but shorted the plaintiff/class representative by approximately one-half hour. (*See's Candy, supra,* 210 Cal.App.4th at pp. 894-895.) The Court of Appeal found that this report supported the propriety of See's rounding policy under California law "because [the policy] was used in a manner that did not result over a period of time in the failure to compensate the employees for all the time they actually worked." (*Id.* at p. 908.) The plaintiff contended that the evidence concerning See's progressive discipline policy which, like Menzies's, threatened termination for excessive tardiness, established that the system was biased in a way that favored See's. The court was not persuaded that this assertion, uncorroborated by facts or evidence, established that See's "nearest-tenth rounding policy is unfair to, or biased against the employees in the class" in the face of the

---

[11]     The principle approved in *See's Candy* concerning the validity of neutral rounding systems had previously been applied to California employee claims by California's federal courts. (See, e.g., *Alonzo v. Maximus, Inc., supra,* 832 F.Supp.2d at pp. 1126-1127; *Gillings v. Time Warner Cable* LLC (C.D. Cal. Mar. 26, 2012, No. CV 10-5565 AG (RNBx) [2012 U.S. Dist. LEXIS 68607 at *14]; *Harding v. Time Warner, Inc.* (S.D. Cal. Jan. 26, 2010, No. CV 09-1212) [2010 US. Dist. LEXIS 5896 at *14].)

statistical evidence that "over time the rounding policy did not result in a loss to the employees." (*Id*. at pp. 912-913.)

With this in mind, we examine the evidence presented by appellant in support of the class certification motion. Appellant submitted no evidence suggesting that Menzies's rounding policy resulted in losses to the average employee over time. Instead, appellant relied on records indicating that a handful of employees suffered losses in specific weeks based on the difference between their actual clock-in and clock-out time and the time reflected on their pay records. Appellant explained that her claim was based not on a showing that compensation failed to average out over time, but on a showing that Menzies failed to pay all wages owed in a particular pay period. Appellant specifically contended that "the fact that [Menzies] paid more wages [in] a different pay period does not liberate [it from its] liability of [sic] failing to pay all wages owed on a prior pay period," and that a rounding policy could be deemed neutral only if "at the end of the pay period . . . the employer has paid the employee for all hours worked during that pay period . . . ." (Emphasis omitted.)

The claim appellant purported to assert was not in accord with the federal regulation or the holding in *See's Candy*, both of which require a showing that the rounding system consistently results in underpayment to the average employee over time. Indeed, it appears to be diametrically opposed to the holding in *See's Candy*, which recognized that statistical evidence indicating the rounding policy properly compensated the average employee would provide the employer a complete defense, despite evidence that a particular employee was disadvantaged. More important, as the trial court found, the claim presented by appellant was not a type amenable to class litigation. In order to establish it, the records of each employee would have to be examined individually to determine whether that employee suffered a loss in any particular pay period. In her brief, appellant

16

contends that whether the rounding system favored Menzies over the employees is an issue of fact common to the entire class. But appellant expressly disavowed a claim based on establishing that the system, as a whole or on average, disadvantaged Menzies's employees, in favor of a claim based on each employee's experience from pay period to pay period. The trial court did not abuse its discretion in finding that individual issues would predominate because "each class member's time records would have to be examined individually" to establish liability for the claim asserted.

Appellant contends that the trial court erroneously considered the merits of her claim in rendering its determination on the class certification issue. We disagree. It is an established rule that "resolution of disputes over the merits of a case generally must be postponed until after class certification has been decided [citation], with the court assuming for purposes of the certification motion that any claims have merit [citation]." (*Brinker*, *supra*, 53 Cal.4th at p. 1023.) It is equally well-recognized, however, that issues affecting the merits of a case may be "'enmeshed with class action requirements.'" (*Id.* at p. 1023.) In that situation, "[w]hen evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them." (*Id.* at pp. 1023-1024.) Indeed, as our Supreme Court stated in *Brinker,* "[t]o the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them." (*Id.* at p. 1025.)

Addressing whether questions common to the class predominate over questions affecting members individually requires the trial court to consider the elements of the causes of action alleged. (*Lockheed Martin Corp. v. Superior Court, supra,* 29 Cal.4th at p. 1106; see *Brinker*, *supra*, 53 Cal.4th at p. 1025 [trial court "must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or

17

common issues predominate"].)  "[I]f the presence of an element necessary to certification, such as predominance, cannot be determined without resolving a particular legal issue, the trial court must resolve that issue at the certification stage." (*Brinker, supra,* 53 Cal.4th at pp. 1025-1026, italics omitted.)

Here, the trial court properly assessed the elements of the cause of action alleged, appellant's theory of recovery, the evidence, and the legal and factual issues likely to be presented.  It resolved no legal issues unnecessary to determining predominance.  There was no significant factual dispute, because appellant presented no evidence suggesting that Menzies's companywide rounding policy resulted in employees being deprived of earned compensation over time. Instead, appellant presented evidence to support a different claim -- that a rounding system is unlawful if it does not average out on a weekly basis -- and a theory supported by no evidence -- that Menzies's disciplinary policy would cause employees to behave in ways that would inadvertently result in significant lost time.  As the court recognized in *See's Candy*, theories concerning how a rounding policy might disadvantage employees are no substitute for evidence.  (*See's Candy, supra,* 210 Cal.App.4th at pp. 911-912.)  The trial court properly concluded that individual claims would predominate, and that the claim presented was not amenable to class litigation.

### C.  *Passenger Terminal Employee Class*
#### 1.  *Shuttle Riding Time Claim*

In *Morillion v. Royal Packing Co*. (2000) 22 Cal.4th 575, the Supreme Court held that where an employer requires its employees to travel to work sites on its own buses and permits them to use no alternate form of transportation, it must compensate the employees for the time spent traveling on those buses.  (*Id*. at p. 577.)  The court distinguished its decision from the holding in *Vega v. Gaspar*

18

(5th Cir. 1994) 36 F.3d 417, that employees using company provided buses to get to and from work were not entitled to compensation for travel time, because in *Vega,* the employees "'were not required to use [defendant's] buses to get to work in the morning'" but "'chose . . . how to get to and from work.'" (22 Cal.4th at p. 589, fn. 5, quoting *Vega v. Gaspar*, *supra*, at p. 425.) *Morillion* was followed by *Overton v. Walt Disney Co*. (2006) 136 Cal.App.4th 263, where employee parking was located a distance from the work site and the employer provided a shuttle to transport employees from the parking lot to the work site, but did not require them to drive personal automobiles to work, park in the assigned lot or ride the shuttle: "[The plaintiff] argues *Morillion* mandates travel time payments to employees who, *as a practical matter, are required to use an employer-provided shuttle because no alternative transportation is available or feasible.  We reject this argument, based on Morillion's discussion of Vega*.  The Supreme Court concluded the plaintiffs in *Vega* would not have been entitled to compensation for travel on employer-provided buses under the standard adopted in *Morillion*, because the workers 'were free to choose -- rather than required -- to ride their employer's buses.'  *The Supreme Court's analysis did not turn on whether the bulk of the Vega employees had any alternative transportation reasonably available.*  There was certainly no evidence that the workers who used the employer-provided buses had alternative means of transportation readily available.  In any event, even if we were to recognize the possibility of a "de facto" requirement which could satisfy *Morillion*, the facts of this case would not fall within it.  The evidence is undisputed that [the plaintiff] could have taken a vanpool to [the work site], which would have allowed him preferential parking . . . .  Thus, [the plaintiff] was not required to park in the [remote] lot or take the shuttle in any de facto sense"  (136 Cal.App.4th at pp. 272-273, italics added.)

19

Here, the evidence presented demonstrated that Menzies had no policy requiring employees to commute to work in any particular fashion, park in any particular lot, or ride a shuttle all or any part of the way in. The evidence further established that passenger terminal employees utilized a number of options for commuting, including riding motorcycles and public transportation or having themselves dropped off. Although a significant number apparently park at remote LAX employee lots and take a shuttle, the claim that these employees are entitled to compensation during their shuttle ride time is foreclosed by the decisions in *Morillion* and *Overton*.

Appellant contends the trial court was obliged to ignore that the claim asserted had no merit, and focus on whether individualized proof was necessary to establish "liability" or run afoul of the rule precluding resolution of matters of substance in the context of a certification motion. However, we believe the court applied the proper criteria. First, the court explained that the claim had no merit because appellant had presented no evidence of a policy requiring employees to park in a certain place or arrive at the work site in a particular manner, and the evidence presented established that there were alternates modes of transportation available. The court went on to find that assuming employees were de facto required to drive to work, park in remote lots and take a shuttle due to the lack of practical alternatives, such claims would not be amenable to common proof. We agree. For each employee, the trier of fact would need to consider individual circumstances and why, in view of each employee's particular situation, no other options were available. Such claim would not have been amenable to class resolution.

## 2. *Security Clearance Time Claim*

The trial court observed that appellant had barely mentioned this claim in her moving papers and had failed to support the existence of such a claim with citation to evidence. On appeal, appellant briefly refers to evidence that she was required to clear LAX Airport Terminal security, but neither advances an argument nor cites legal authority establishing a claim for compensation for such time. "An appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority." (*Bullock v. Philip Morris USA, Inc*. (2008) 159 Cal.App.4th 655, 685.) "'The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment.' [Citation.]" (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115, quoting 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 594, p. 627.) Where "an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority," we treat the point as waived or forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785; accord, *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.) We do so here.

### D. *Wage Statement Class*

Labor Code section 226 provides: "Every employer shall . . . at the time of each payment of wages, furnish each of his or her employees . . . an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee [except for exempt employees], (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of

21

the employee and only the last four didgis of his or her social security number, [or the last four digits of the social security number or employee identification number], (8) the name and address of the legal entity that is the employer, and . . . (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . ." (Lab. Code § 226, subd. (a).) Under subdivision (e) of the statute, "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." (*Id.,* subd. (e).)

In *Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, the court held that to state a claim for a violation of Labor Code section 226, an employee must "suffer injury" as a result of the failure by an employer to comply with the statute. "The injury requirement in section 226, subdivision (e), cannot be satisfied simply because one of the nine itemized requirements . . . is missing from a wage statement. . . . [T]he statute requires that an employee may not recover for violations . . . unless he or she demonstrates an injury arising from the missing information." (192 Cal.App.4th at pp. 1142-1143, italics omitted.) According to the court, injury may be established when the inaccurate or incomplete wage statements "required [the] plaintiff[] to engage in discovery and mathematical computations to reconstruct time records to determine if they were correctly paid." (*Id*. at p. 1143.)

Effective January 1, 2013, subdivision (e) was amended to provide that "[a]n employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any

22

one or more of items (1) to (9), inclusive, of subdivision (a)" and "the employee cannot promptly and easily determine from the wage statement alone" certain matters, including as pertinent here: "(i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a)." (Lab. Code, § 226, subd. (e)(2)(B)(i).) For purposes of this subdivision "'promptly and easily determine' means a reasonable person would be able to readily ascertain the information without reference to other documents or information."

Appellant agrees that injury is an element of a Labor Code section 226 claim. She contends, however, that the element is satisfied if an employee must use a calendar to determine a wage period's start date, and that to the extent *Price* holds otherwise, the Legislature's amendment signals disapproval. We disagree. *Price* held that the injury requirement is minimal and can be established if the employee cannot easily ascertain from the information provided if his or her wages and hours were correctly calculated. The amendment confirms that the standard is whether the employee can "promptly and easily determine" from the wage statement alone the critical information needed to assure that he or she is not being underpaid.

As the trial court correctly observed, appellant submitted no evidence to show that she or any other class members suffered any injury as a result of Menzies's failure to include the start date on wage statements. None claimed to have been confused by the wage statements or unable to determine the applicable pay period. In the absence of evidence supporting that employees were injured in a manner suitable for class resolution, determination of injury would require

23

introduction of evidence specific to each particular employee.[12]  Accordingly, the trial court reasonably concluded that "common question do not predominate," and any injuries suffered by potential class members would require adjudication on an individualized basis.

---

[12]     Appellant seeks to rely on *McKenzie v. Fed. Express Corp.* (C.D. Cal. 2011) 275 F.R.D. 290, where the court found that the employer's violations of Labor Code section 226 supported certification of a class claim for injury.  (*Id.* at p. 294.)  That case is distinguishable.  There, in addition to failing to state the beginning date for the relevant pay period, the wage statements at issue did not clearly state the total number of hours each employee worked or the employee's hourly overtime rate.  The court concluded the requisite injury was present because the wage statements required the plaintiffs "to engage 'in discovery and mathematical computation to reconstruct time records to determine if they were correctly paid.'"  (275 F.R.D. at p. 294, quoting *Price v. Starbucks Corp.*, *supra*, 192 Cal.App.4th at p. 1143.)  Here, the wage statements correctly stated the number of regular hours worked per pay period, the number of overtime hours, and the hourly pay for both.  They also included the last date of the pay period and indicated whether the period was "weekly" or "biweekly."  Accordingly, although an employee might have needed to consult a calendar to be sure of the start date, he or she would not need to engage in discovery or mathematical computation to reconstruct time records to determine whether his or her pay had been accurately calculated.

**DISPOSITION**

The order partially denying appellant's motion for class certification is affirmed. Menzies is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.