[No. B196235. Second Dist., Div. Seven. Aug. 26, 2008.]

CHARLES LEE et al., Plaintiffs and Appellants, v.
DYNAMEX, INC., et al., Defendants and Respondents.

1328

COUNSEL

Boudreau Williams, Jon R. Williams; Pope, Berger & Williams, A. Mark Pope; Levy, Stern & Ford and Lewis N. Levy for Plaintiffs and Appellants.

Littler Mendelson, Robert G. Hulteng, Damon M. Ott and Ellen Bronchetti for Defendants and Respondents.

OPINION

**PERLUSS, P. J.**—Charles Lee filed a putative class action lawsuit on his own behalf and on behalf of all similarly situated drivers for Dynamex, Inc., a parcel delivery company, alleging Dynamex had improperly reclassified the drivers from employees to independent contractors in violation of California law. After first denying Lee's motion to compel Dynamex to identify and provide contact information for potential putative class members, the trial court denied Lee's motion for class certification. Because the trial court's discovery ruling directly conflicts with the Supreme Court's subsequent decision in *Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360 [53 Cal.Rptr.3d 513, 150 P.3d 198] (*Pioneer*), as well as our decisions in *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554 [57 Cal.Rptr.3d 197] and *Puerto v. Superior Court* (2008) 158 Cal.App.4th 1242 [70 Cal.Rptr.3d 701] (*Puerto*), and that ruling improperly interfered with Lee's ability to establish the necessary elements for class certification, we reverse both orders and remand for further proceedings regarding class certification.

## FACTUAL AND PROCEDURAL BACKGROUND

Dynamex is a nationwide courier and delivery service based in Dallas, Texas, which has conducted business in California since 1995 and presently operates four business centers in California: La Mirada, Hayward, Sacramento and San Diego. Since 2001 Dynamex has employed approximately 810 drivers. In December 2004 Dynamex converted all its drivers to independent contractors after management concluded such a conversion would generate economic savings for the company.

Drivers are required to obtain insurance through the National Independent Contractors Association (NICA), which, in turn, issues settlement checks as payment for work performed by the drivers. Dynamex promulgates tables for the rates to be charged its customers[1] and standardizes the amounts to be paid

---

[1] Dynamex customers include companies like Office Depot and Home Depot.

the independent contractors. For fixed routes, drivers are assigned a route by Dynamex and service the route for either a flat fee or a set amount per package. For on-demand work, drivers maintain contact with Dynamex using a required Nextel cellular telephone (paid for by the individual driver) and are assigned work by Dynamex dispatchers. In each case drivers perform pickups and deliveries using their personal vehicles but wearing Dynamex uniform shirts and badges and in accordance with Dynamex requirements. Although Dynamex maintains a policy allowing drivers to refuse work assigned by Dynamex, some drivers testified they were forbidden to work for other entities, were required to be available to Dynamex on their "on-time" and faced "blackballing" were they to refuse Dynamex assignments. Dynamex retains the right to terminate drivers at any time for any reason.

Named plaintiff Lee entered into a written independent contractor agreement to perform delivery services for Dynamex in January 2005. According to Dynamex, Lee had never before worked in the delivery industry and had performed delivery services for Dynamex for a total of 15 days. He worked only as an on-demand driver dispatched by Dynamex's La Mirada facility and never performed any deliveries directly for Dynamex customers or for any company other than Dynamex. On April 15, 2005, three months after leaving Dynamex, he filed this action as the sole class representative challenging the legitimacy of Dynamex's relationship with its independent contractor drivers.

The gist of Lee's complaint is that, since December 2004, the drivers have performed the same tasks in the same manner as they did when they were classified as employees, but Dynamex now fails to comply with Labor Code requirements for employees. The complaint alleges five causes of action arising from Dynamex's purportedly wrongful reclassification of employees as independent contractors: two counts of unfair and unlawful business practices in violation of Business and Professions Code section 17200; and three counts of Labor Code violations based on Dynamex's failure to pay overtime compensation, to provide properly itemized wage statements or to compensate for business expenses.

Shortly after filing the complaint, Lee served interrogatories seeking to discover the names and addresses of all drivers who had worked as independent contractors for Dynamex. Dynamex resisted the discovery, principally under the authority of the then-recent Court of Appeal decision in *Pioneer Electronics (USA), Inc. v. Superior Court* (Cal.App.), in which the court approved the use of an "opt-in" letter for notifying members of a putative

class of the pending lawsuit.[2] Although the Supreme Court had granted review of the case on July 27, 2005, Dynamex continued to rely on its analysis and contended the case "signals a current trend that putative class members be given the right to opt-in to the disclosure of information to class action lawyers."[3] Dynamex rejected Lee's proposal to use an "opt-out" letter. Lee then moved to compel Dynamex to disclose the requested identification and contact information in January 2006. At a March 28, 2006 hearing on the discovery motion the trial court advised counsel for Lee and the putative class it considered the motion "premature" and stated it would not order disclosure of names and contact information until the class had been certified.

At a December 12, 2006 hearing Lee, acting as named representative, sought to certify a class consisting of "[a]ll persons classified as independent contractors who personally picked up and delivered documents, packages, parcels, merchandise, and other shipments for Dynamex, Inc. in the state of California between April 15, 2001 and the present time using their personal vehicles with Gross Vehicle Weight Ratings of less than 10,000 lbs." In response to Dynamex's argument the proposed class was overinclusive, Lee refined the putative class definition to exclude individuals from the class for any period of time in which they (1) were not affiliated with NICA or another third party administrator for the purpose of providing services to Dynamex; (2) provided services to Dynamex through their own employees or subcontractors more than 50 percent of the time; (3) concurrently picked up or delivered shipments for Dynamex and another package delivery service that does not have a business relationship with Dynamex; or (4) concurrently picked up or delivered shipments for Dynamex and their own customers. The court denied the motion based on the lack of ascertainability of the class; a lack of commonality among the factual situations of the various drivers; a lack of typicality of the claims and defenses relating to Lee, the proposed class representative; and the court's doubt class adjudication would be the superior remedy for resolution of the claims raised in the complaint.

Lee filed a timely notice of appeal from the order denying class certification. (See *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27] [denial of certification motion to entire class is an appealable order]; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732] [trial court order that "determines the legal insufficiency of the

---

[2] An "opt-in" letter requires the recipient to manifest consent to disclosure of identifying information before his or her name or contact information will be released to the named plaintiff. An "opt-out" letter requires no action by the recipient unless he or she wishes to prevent disclosure of his or her identifying information.

[3] As discussed below, in January 2007 a unanimous Supreme Court reversed the judgment of the Court of Appeal because its "ruling is overprotective of the purchasers' [putative class members'] privacy rights, inconsistent with established privacy principles, and likely to cause adverse consequences in future cases . . . ." (*Pioneer, supra,* 40 Cal.4th at p. 364.)

complaint as a class suit . . . is in legal effect a final judgment from which an appeal lies"]; see also *Aguiar v. Cintas Corp. No. 2* (2006) 144 Cal.App.4th 121, 131 [50 Cal.Rptr.3d 135] (*Aguiar*).) Because the trial court's discovery order necessarily affects the appealable order denying class certification, in effect a final judgment, it is also properly considered at this time. (See Code Civ. Proc., § 906 [on appeal from final judgment, appellate court may review "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party"].)

## CONTENTIONS

Lee contends the trial court erred in its denial of the motion for class certification and in denying his earlier motion to compel discovery, a ruling that prevented him from gathering adequate information to support his motion for class certification.

## DISCUSSION

### 1. *The Standards for Review of a Class Certification Order*

A trial court's ruling on a motion for class certification is reviewed for abuse of discretion. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194] (*Sav-On*).) " 'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . . [Accordingly,] a trial court ruling supported by substantial evidence generally will not be disturbed "unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]" [citation]. . . . "Any valid pertinent reason stated will be sufficient to uphold the order." ' " (*Id.* at pp. 326–327; accord, *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 [56 Cal.Rptr.3d 861, 155 P.3d 268]; see also *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1106 [131 Cal.Rptr.2d 1, 63 P.3d 913].)

 Class actions are statutorily authorized "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." (Code Civ. Proc., § 382.) "The certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' " (*Sav-On, supra,* 34 Cal.4th at p. 326.) "As the focus in a certification dispute is on what type of questions—common or individual— are likely to arise in the action, rather than on the merits of the case [citations], in determining whether there is substantial evidence to support a

trial court's certification order, [the reviewing court] consider[s] whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment." (*Id.* at p. 327.) " '[T]his state has a public policy which encourages the use of the class action device.' " (*Id.* at p. 340; see *Aguiar, supra,* 144 Cal.App.4th at pp. 131–132.)

■ "The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members." (*Sav-On, supra,* 34 Cal.4th at p. 326.) "The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Ibid.*; accord, *Fireside Bank v. Superior Court, supra,* 40 Cal.4th at p. 1089.) " '[T]his means "each member must not be required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants." ' " (*Lockheed Martin Corp. v. Superior Court, supra,* 29 Cal.4th at p. 1108.)

"A class action also must be the superior means of resolving the litigation, for both the parties and the court. [Citation.] 'Generally, a class suit is appropriate "when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer." [Citations.]' [Citation.] '[R]elevant considerations include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing.' [Citation.] '[B]ecause group action also has the potential to create injustice, trial courts are required to " 'carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts.' " [Citation.]' " (*Newell v. State Farm General Ins. Co.* (2004) 118 Cal.App.4th 1094, 1101 [13 Cal.Rptr.3d 343]; accord, *Aguiar, supra,* 144 Cal.App.4th at pp. 132–133; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2008) ¶ 14:16, p. 14-13 (rev. # 1, 2008) [benefits of class action evaluated by (1) interest of each putative class member in controlling his or her case personally; (2) potential difficulties in managing a class action; (3) nature and extent of already pending litigation by individual class members involving the same controversy; and (4) desirability of consolidating all claims in a single action before one court].)

## 2. *The Trial Court Erred in Finding the Proposed Class Lacked Ascertainability*

 "Ascertainability is required in order to give notice to putative class members as to whom the judgment in the action will be res judicata." (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 914 [107 Cal.Rptr.2d 761].) " 'Class members are "ascertainable" where they may be readily identified without unreasonable expense or time by reference to official records. [Citation.]' " (*Aguiar, supra,* 144 Cal.App.4th at p. 135.) In determining whether a class is ascertainable, the trial court examines the class definition, the size of the class and the means of identifying class members. (*Miller v. Woods* (1983) 148 Cal.App.3d 862, 873 [196 Cal.Rptr. 69].) A class is not inappropriate merely because each member at some point may be required to make an individual showing as to eligibility for recovery. (*Aguiar,* at p. 136.) Rather than focusing the ascertainability question on the ultimate fact class members would have to prove to establish liability, this element is "better achieved by defining the class in terms of objective characteristics and common transactional facts making the ultimate identification of class members possible when that identification becomes necessary." (*Hicks,* at p. 915.)

The trial court determined the putative class was not sufficiently ascertainable, focusing on the four exclusions offered by Lee as a means of refining the categories of drivers to be included. Stating "it is unclear how to deal with hybrid drivers [those who perform services for their own customers or an independent package delivery service] or how to determine whether or not someone is excluded altogether or not by the language of the exclusions,"[4] the court concluded Lee had failed to define the class in terms of "objective characteristics and common transactional facts."

Because the basic parameters of the class proposed by Lee can be readily ascertained through company records, the trial court's rejection of the proposed class on this ground was unjustified. Evaluating a somewhat similar denial of a motion for class certification in *Aguiar, supra,* 144 Cal.App.4th 121, we reversed the trial court's refusal to certify a class consisting of current and former employees of Cintas Corporation who had worked on particular service contracts within a limited period because the company's payroll records would identify all employees who performed functions relevant to the pertinent contracts during the timeframe in question. (*Id.* at

---

[4] As discussed, Lee proposed to exclude, at least in part, individuals otherwise covered by the general class definition if they (1) were not affiliated with NICA or another third party administrator; (2) provided services to Dynamex through their own employees or subcontractors more than 50 percent of the time; (3) concurrently picked up or delivered shipments for Dynamex and an independent package delivery service or (4) concurrently picked up or delivered shipments for Dynamex and their own customers.

p. 136.) We held, even though not all employees had been assigned to work on the particular contracts, "it [would be] reasonable to infer at this stage of the litigation that all employees in relevant positions worked to some extent . . ." on those contracts, and, if it were later determined that certain employees did not work on the contracts, they could be eliminated from the class at that time. (*Ibid.*) *Aguiar* further instructs it may ultimately be appropriate to facilitate class treatment through the use of subclasses, which can be implemented following discovery into the factual differences among members of the class.[5] (*Aguiar*, at p. 134; see *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470–471 [174 Cal.Rptr. 515, 629 P.2d 23] [class action need not be dismissed when trial court can use subclasses to remove any antagonism among members of the putative class]; see also *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964] [efficiency of class action may be promoted by use of subclasses]; *Hicks v. Kaufman & Broad Home Corp., supra,* 89 Cal.App.4th at p. 926 [recognizing trial court's ability to divide class members into subclasses to eliminate differences in damage claims].)

More recently, Division One of this court affirmed the ascertainability of a class consisting of FedEx drivers over FedEx's objection "the members of this class shifted 'in and out, sometimes on a day-to-day basis . . . .' " (*Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 14 [64 Cal.Rptr.3d 327] (*Estrada*).) As our Division One colleagues explained, "The class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself as having a right to recover based on the description. [Citation.] [¶] . . . If FedEx's claim is that every member of the class had to be identified from the outset, FedEx is simply wrong." (*Ibid.*; see also *Sav-On, supra,* 34 Cal.4th at p. 333 [" 'a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery . . .' "]; *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1208 [76 Cal.Rptr.3d 804] [class of employees ascertainable in spite of absence of specific rest period records; "speculation that goes to the merits of ultimate recovery [is] an inappropriate focus for the ascertainability inquiry"]; *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 743 [9 Cal.Rptr.3d 544] [class of all employees in certain job categories ascertainable even though some employees may not have worked overtime and thus may not be entitled to any recovery].)

---

[5] As *Aguiar* further explains, a defendant may not avoid class certification by making a business decision to commingle or fail to document particular job assignments or tasks. (*Aguiar, supra,* 144 Cal.App.4th at p. 134.)

In short, the trial court's analysis unnecessarily confused issues of ascertainability with the merits of the underlying claims. Dynamex records are adequate to identify those persons classified as independent contractors who qualify for membership in the proposed class. At this stage of the proceeding, nothing more is required; and appropriate exclusions can be implemented at a later stage. (See *Bell v. Farmers Ins. Exchange, supra,* 115 Cal.App.4th at p. 744 [fact that class may ultimately turn out to be overinclusive not determinative; most class actions contemplate eventual individual proof of damages, including possibility some class members will have none]; *Estrada, supra,* 154 Cal.App.4th at p. 26 ["discovery was necessary to determine whether in fact there was an ascertainable class and, if so, whether it was manageable"].)

### 3. *The Trial Court Abused Its Discretion in Denying Lee's Motion to Compel Disclosure of the Identity of Potential Class Members*

■ The trial court was plainly disturbed by Lee's failure to produce additional evidence to support a finding of community of interest among potential class members in terms of the predominance of common questions of law or fact, the typicality of Lee's claims or the adequacy of his representation as the sole named plaintiff. Ordinarily, we would defer to a trial court's exercise of discretion on these issues; but, in light of the trial court's discovery order precluding identification of potential class members before certification, we conclude Lee was not provided with an adequate opportunity to meet his burden and, therefore, reverse the denial of the class certification motion with directions to permit discovery to proceed and then to conduct a new class certification hearing.

■ In *Pioneer, supra,* 40 Cal.4th 360, decided after the trial court rulings at issue here, the Supreme Court unanimously reversed the Court of Appeal decision relied upon by Dynamex in opposing Lee's precertification discovery request for the names and contact information of potential class members, finding the Court of Appeal's decision requiring an opt-in letter, rather than an opt-out procedure, had been overly deferential to the consumers' rights of privacy. As the Supreme Court explained, the right of privacy in the California Constitution (art. I, § 1), "protects the individual's *reasonable* expectation of privacy against a *serious* invasion." (*Pioneer,* at p. 370.) " 'Conduct alleged to be an invasion of privacy is to be evaluated based on the extent to which it furthers legitimate and important competing interests.' [Citation.] Protective measures, safeguards and other alternatives may minimize the privacy intrusion. 'For example, if intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know, privacy concerns are assuaged.' " (*Id.* at p. 371, quoting *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 38 [26 Cal.Rptr.2d 834, 865 P.2d 633].)

■ Pointing out that "[c]ontact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case" (*Pioneer, supra,* 40 Cal.4th at p. 373), the Supreme Court held the trial court had reasonably concluded the plaintiff's interest in obtaining contact information outweighed the modest privacy invasion occasioned by the opt-out letter proposed by the plaintiff. (*Id.* at pp. 373–374.) "From the standpoint of fairness to the litigants in prosecuting or defending the forthcoming class action, Pioneer would possess a significant advantage if it could retain for its own exclusive use and benefit the contact information of those customers who complained regarding its product. Were plaintiff also able to contact these customers and learn of their experiences, he could improve his chances of marshalling a successful class action against Pioneer, thus perhaps ultimately benefiting some, if not all, those customers." (*Id.* at p. 374.) Accordingly, the Supreme Court reinstated the trial court's order requiring Pioneer to use an opt-out letter in notifying customers who had purchased a particular DVD player of their right to participate in a class action.

We recently relied on *Pioneer, supra,* 40 Cal.4th 360, to hold a trial court had abused its discretion by refusing to allow a plaintiff to send an opt-out letter to employees of Wild Oats Markets, Inc., in a wage and hour lawsuit. (See *Puerto, supra,* 158 Cal.App.4th at p. 1252.) As in this case, the plaintiffs in *Puerto* sought disclosure of employee names and addresses. Although Wild Oats provided names, it refused to disclose contact information, asserting the workers' privacy rights. The trial court granted the plaintiffs' motion to compel disclosure of the contact information, but directed the parties to utilize an opt-in procedure to assess which employees were willing to be contacted. (*Id.* at p. 1247.) We reversed, reasoning, on the one hand, that "current and former Wild Oats employees . . . may reasonably be supposed to want their information disclosed to counsel whose communications . . . may alert them to similar claims they may be able to assert," and, on the other hand, that "the requested information, while personal, is not particularly sensitive, as it is merely contact information, not medical or financial details, political affiliations, sexual relationships, or personnel information." (*Id.* at p. 1253.)

■ Moreover, we noted, "it is only under unusual circumstances that the courts restrict discovery of nonparty witnesses' residential contact information. . . . [T]he discovery [here] is designed to identify witnesses rather than to establish facts about the existence of [private] relationships." (*Puerto, supra,* 158 Cal.App.4th at p. 1254.) "As the Supreme Court pointed out in *Pioneer,* the information sought . . . here—the location of witnesses—is

generally discoverable, and it is neither unduly personal nor overly intrusive." (*Id.* at p. 1254.) Certainly, the trial court has not identified any privacy concern on the part of Dynamex independent contractors that would warrant disregard of this basic principle. (See *Parris v. Superior Court* (2003) 109 Cal.App.4th 285, 301 [135 Cal.Rptr.2d 90] [to restrict such discovery, trial court required to "expressly identify any potential abuses of the class action procedure that may be created if the discovery is permitted, and weigh the danger of such abuses against the rights of the parties under the circumstances"]; *Belaire-West Landscape, Inc. v. Superior Court, supra*, 149 Cal.App.4th at p. 561 [denying writ petition seeking to overturn trial court order granting plaintiffs' motion to compel identification of potential class members in wage and hour lawsuit through opt-out letter; "[w]hile it is unlikely that the employees anticipated broad dissemination of their contract information . . . , that does not mean that they would wish it to be withheld from a class action plaintiff who seeks relief for violations of employment laws"]; *CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 298–299 [71 Cal.Rptr.3d 441] [precertification discovery of names and contact information of potential class members warranted where no showing of undue privacy invasion and risk existed that alleged abuses by defendant would go unaddressed absent notice to potential class members].) Accordingly, based on the current state of the law, which we necessarily apply in reviewing the trial court's order now before us (see *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24 [44 Cal.Rptr.2d 370, 900 P.2d 619] [explaining "general rule that judicial decisions are to be applied retroactively"]; *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585] [same]), there can be no question the trial court abused its discretion by denying the motion to compel disclosure of independent contractor names and addresses through the use of the opt-out procedure proposed by Lee.

Because of the trial court's erroneous discovery order, Lee lacked the means to develop evidence capable of supporting his motion for class certification. Thus, rather than engaging in any review of the trial court's order denying class certification at this time, we remand the matter to the trial court with directions to grant Lee's motion to compel disclosure of the names and contact information of potential class members and thereafter to permit the parties to file supplemental papers regarding the propriety of class certification and to conduct a new class certification hearing.[6]

---

[6] Dynamex filed a request for judicial notice of various deposition notices and transcript excerpts from depositions conducted by Lee to demonstrate his access to adequate information about Dynamex's employment practices. Without commenting on the merits of Dynamex's request, which Lee opposed on numerous grounds, we deny the request in light of the analysis set forth above.

## DISPOSITION

The orders of the trial court denying Lee's motion to compel and motion for class certification are reversed. The cause is remanded with directions to the trial court to issue a new order compelling Dynamex to provide the requested discovery, as set forth in this opinion, and thereafter to permit the parties to submit supplemental materials before conducting a new class certification hearing. Lee is to recover his costs on appeal.

Woods, J., and Zelon, J., concurred.