Filed 10/15/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DYNAMEX OPERATIONS WEST, INC., <br><br>     Petitioner, <br><br>     v. <br><br> THE SUPERIOR COURT OF <br> LOS ANGELES COUNTY, <br><br>     Respondent; <br><br> CHARLES LEE et al., <br><br>     Real Parties in Interest. | B249546 <br><br> (Los Angeles County <br> Super. Ct. No. BC332016) |

ORIGINAL PROCEEDINGS in mandate. Michael L. Stern, Judge. Petition granted in part and denied in part.

Littler Mendelson, Robert G. Hulteng, Damon M. Ott; Sheppard Mullin Richter & Hampton, Ellen M. Bronchetti and Paul S. Cowie, for Petitioner Dynamex Operations West, Inc.

No appearance for Respondent.

Pope, Berger & Williams, A. Mark Pope; Glancy Binkow & Goldberg, Kevin Ruf; Boudreau Williams and Jon R. Williams for Real Parties in Interest, Charles Lee and Pedro Chevez.

_____

Charles Lee and Pedro Chevez were hired by Dynamex Operations West, Inc. (formerly Dynamex, Inc.) (Dynamex), a nationwide courier and delivery service, as drivers to make deliveries of packages, letters and parcels to Dynamex customers. Prior to 2004 Dynamex had classified its California drivers as employees and compensated them subject to this state's wage and hour laws. In 2004 Dynamex converted the status of all drivers from employee to independent contractor. This lawsuit was filed in April 2005 alleging that drivers, as a practical matter, continued to perform the same tasks as they had when classified as employees with no substantive changes to the means of performing their work or the degree of control exercised by Dynamex and, as a consequence, the reclassification of Dynamex drivers violated California law. The plaintiff, Charles Lee, sought to represent approximately 1,800 drivers engaged by Dynamex as independent contractors. After its initial denial of class certification was reversed by this court, respondent superior court certified the proposed class in 2011.

Over the course of the next two years, Dynamex twice moved to decertify the class. When its second motion was denied, Dynamex filed this petition for a writ of mandate, arguing the superior court had improperly adopted the definition of "employee" found in Industrial Welfare Commission (IWC) wage orders[1] to ascertain the status of class members (see *Martinez v. Combs* (2010) 49 Cal.4th 35 (*Martinez*)), and had failed to use the common law test for distinguishing between employees and independent contractors discussed in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (*Borello*). According to Dynamex, if the *Borello* common law test, rather than the IWC standard approved in *Martinez*, is applied, the class must be decertified because the predominance of individual issues relevant to that test would make it infeasible to litigate the plaintiffs' claims as a class action.

---

[1] The IWC is the state agency empowered to regulate wages, hours and working conditions through wage orders governing specific industries and occupations. (See *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1027; *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 795.)

We issued an order to show cause why respondent superior court should not be compelled to vacate its order denying the motion to decertify the class. We now grant the petition in part. We conclude the superior court correctly allowed plaintiffs to rely on the IWC definition of an employment relationship for purposes of those claims falling within the scope of Wage Order No. 9-2001 (Wage Order No. 9). (Cal. Code Regs., tit. 8, § 11090.) With respect to those claims falling outside the scope of Wage Order No. 9, the common law definition of employee will control. As to those claims, we grant the petition to allow the superior court to reevaluate whether, in light of the Supreme Court's recent decision in *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522 (*Ayala*), class certification remains appropriate by focusing its analysis "on differences in [the defendant's] right to exercise control" rather than "variations in how that right was exercised." (*Id.* at p. 528.)

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Motions To Certify and To Decertify the Class*

Lee and his co-plaintiff, Pedro Chevez, are former same-day delivery drivers who were engaged by Dynamex as independent contractors. The operative second amended complaint alleges Dynamex's classification of drivers as independent contractors rather than employees violated provisions of Wage Order No. 9, as well as various sections of the Labor Code,[2] and it had engaged in unfair and unlawful business practices under Business and Professions Code section 17200.

Lee's first motion for class certification, filed in November 2006, was denied on two grounds—the inascertainability of the class and a lack of common issues. We reversed that ruling. (*Lee v. Dynamex, Inc.* (2008) 166 Cal.App.4th 1325.) Based on the Supreme Court's intervening decision in *Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360, we concluded the trial court had improperly denied Lee's "motion to compel Dynamex to identify and provide contact information for potential putative class members," a ruling that "improperly interfered with Lee's ability to

---

[2] Statutory references are to the Labor Code unless otherwise indicated.

3

establish the necessary elements for class certification . . . ." (*Lee v. Dynamex, supra,* 166 Cal.App.4th at p. 1329.)

In June 2009 Lee filed a second motion for class certification, which was granted. The certified class contained four subclasses and several limited exclusions involving drivers who had hired other drivers to perform services for Dynamex, worked for other companies while also driving for Dynamex or transported certain hazardous items or transported freight in interstate commerce. Because of the lack of records sufficient to identify members of the class, the parties agreed to send questionnaires to each putative class member seeking information as to class membership. The trial court entered a stipulated order that the class was only "conditionally" certified pending the questionnaire process.

According to Dynamex, the questionnaire responses proved the unworkable nature of the proposed class. In December 2010 it moved to decertify the class on the grounds no records existed to identify class members; individualized inquiries were necessary to determine employment status; and contradictions in sworn testimony demonstrated the need for cross-examination to avoid a violation of its due process rights. The trial court granted the motion but allowed the plaintiffs to change the class definition one more time. The court subsequently vacated the order decertifying the class and continued the motion to allow plaintiffs to file a third motion for class certification. Relying on the Supreme Court's then-recent decision in *Martinez, supra,* 49 Cal.4th 35, Lee and Chevez contended drivers met the test for employment so long as Dynamex knew the drivers were providing services or negotiated the rates paid to the drivers: In other words, adherence to the common law rule described in *Borello* was not necessary to certification of the proposed class. The superior court agreed and certified the class.[3]

---

[3]     The certified class was defined as "Persons classified as independent contractors who performed pick-up or delivery services for Dynamex Operations West, Inc. ["DYNAMEX"], in the State of California between April 15, 2001 and the present time using their personally owned or leased vehicles with Gross Vehicle Weight Ratings of less than 26,000 lbs." Subclass 1 was defined as "Drivers who used vehicles with Gross Vehicle Weight Ratings (GVWR) of 10,000 lbs or less to perform services for

In December 2012 Dynamex renewed its motion to decertify the class on the ground intervening law had demonstrated the error of the court's reliance on *Martinez.* The superior court denied the motion to decertify.

2. *The Petition for Writ of Mandate*

On June 24, 2013 Dynamex petitioned this court for a writ of mandate directing the superior court to vacate its ruling denying the motion to decertify the class and to enter a new order decertifying the class. In response to our invitation to file a preliminary opposition to the petition, real parties in interest Lee and Chevez submitted a letter stating they strongly disagreed with Dynamex's legal arguments but supported its request that we issue an order to show cause and review the issues presented in the writ petition at this time. Accordingly, on July 10, 2013 we issued an order to show cause to determine whether the superior court erred in ruling a class may be certified under the IWC definition of employee as construed by the Supreme Court in *Martinez* or, as Dynamex contends, may proceed only under the common law test discussed in *Borello.*

Lee and Chevez filed their written return on October 8, 2013; Dynamex filed a reply on November 15, 2013. Pursuant to California Rule of Court, rule 8.200(a)(4), on July 7, 2014 this court requested that the parties file supplemental letter briefs addressing the effect, if any, of the Supreme Court's recent decisions in *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1 (*Duran*) and *Ayala, supra,* 59 Cal.4th 522. Supplemental briefs were received in August 2014,[4] and oral argument was heard on October 3, 2014. We now grant the petition in part.

DYNAMEX." Subclass 2 was defined as "Drivers who used vehicles with Gross Vehicle Weight Ratings (GVWR) in excess of 10,001 lbs and less than 26,000 lbs to perform services for DYNAMEX." The class excluded drivers who had not returned questionnaires; provided services for Dynamex while employed or subcontracted to another person or entity; provided services for Dynamex through their own employees or subcontractors; performed services for Dynamex and unrelated delivery services; or performed services for Dynamex and their own personal customers.

[4] Dynamex argued in its letter brief that *Ayala* was irrelevant to the issues raised in its petition but that *Duran*, which involved the manageability of individual issues in evaluating class certification, supported its argument the superior court had erred in

1. *Standard of Review*

To prevail on a motion to certify a class, "[t]he party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."'" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021; accord, *Ayala, supra,* 59 Cal.4th at pp. 529-530.) "'The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious."'" (*Brinker*, at p. 1023.) Nonetheless, "a court may 'consider[] how various claims and defenses relate and may affect the course of the litigation' even though such 'considerations . . . may overlap the case's merits.'" (*Id.* at p. 1024.)

We review a trial court's ruling on a certification motion, as well as a decertification motion, for abuse of discretion and generally will not disturb it "'"unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions."'" (*Ayala, supra*, 59 Cal.4th at p. 530; see *Harper v. 24 Hour Fitness, Inc.* (2008) 167 Cal.App.4th 966, 973-974.) As in *Ayala,* "the central legal issue" presented here is "whether putative class members are employees for purposes of the provisions under which they sue." (*Ayala*, at p. 530.) "If they are employees, [Dynamex] owes them various duties that it may not have fulfilled; if they are not, no liability can attach." (*Id.* at p. 530.)

---

denying its decertification motion. Lee and Chevez, on the other hand, insisted *Duran* provided little guidance since it primarily concerned the use of statistical sampling in the trial of a class action lawsuit, but that *Ayala* has direct application to this case.

## 2. *Common Law Principles for Identification of an Employee Relationship*

"Under the common law, "'[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired.'" [Citations.] What matters is whether the hirer 'retains all *necessary* control' over its operations. [Citation.] "'[T]he fact that a certain amount of freedom of action is inherent in the nature of the work does not change the character of the employment where the employer has general supervision and control over it.'" [Citations.] Perhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because '[t]he power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities.'" (*Ayala, supra,* 59 Cal.4th at p. 531, quoting, inter alia, *Borello*, *supra,* 48 Cal.3d at p. 350.) Secondary indicia of employment status under the common law include "'(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.'" (*Ayala,* at p. 532, quoting *Borello* at p. 351.)

In *Ayala* the Supreme Court revisited the common law definition of an employee relationship in the same context as is at issue in this case—that is, whether a class may be certified in a wage and hour action alleging the defendant had misclassified its employees as independent contractors. The trial court had denied the plaintiffs' motion to certify the putative class of newspaper carriers hired by the Antelope Valley Press to deliver its newspaper after finding common issues did not predominate. (*Ayala, supra,* 59 Cal.4th at p. 529.) The trial court reasoned *Borello*'s common law test for an employment

7

relationship would require "heavily individualized inquiries" into the newspaper's control over the carriers' work. (*Ayala*, at p. 529.) While the case was pending before it, the Supreme Court directed the parties to submit supplemental briefs discussing the relevance of *Martinez* and IWC Wage Order No. 1-2001, subdivision 2(D)-(F) to the issues in the case. (*Ayala,* at p. 531.)[5] Although raising the question presented here, that is, in evaluating whether common issues predominate on the certification question a class plaintiff may rely on the applicable IWC wage order to determine employee status or is instead limited to the common law test, the Supreme Court reversed the trial court's ruling without resolving it. Because the plaintiffs had proceeded under the common law definition, the Court limited its discussion to whether plaintiffs' claims were susceptible to proof on a classwide basis under that test. Finding the trial court should have focused on "differences in [the defendant's] right to exercise control," rather than "variations in how that right was exercised" (*id.* at p. 528) in concluding individual issues predominated, the Court reversed the order denying class certification and remanded the case for reconsideration of the motion under the correct legal standards (*id.* at p. 540).

       3. *Martinez and the IWC Definition of an Employment Relationship*

       In *Ayala* the Court found it unnecessary to discuss the statutory context of the plaintiffs' claims,[6] focusing instead on how a court should approach the question of

---

[5]    The order for supplemental briefing also cited *Sotelo v. Medianews Group, Inc.* (2012) 207 Cal.App.4th 639, 660-662, and *Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1146-1147, cases we discuss below.

[6]    Responding to Justice Chin's reservations, the Court stated: "'As Justice Chin's concurrence notes, *Borello* recognized 'the concept of "employment" embodied in the [Workers' Compensation] Act is not inherently limited by common law principles' (*Borello, supra,* 48 Cal.3d at p. 351) and identified a handful of other considerations that might 'overlap those pertinent under the common law' (*id.* at p. 354; see *id.* at pp. 351-355 [discussing additional considerations relevant in light of the remedial purposes of the statutory scheme there at issue]). Strictly speaking, however, those further considerations are not part of the common law test for employee status. The concurrence's assertion they are relevant here (conc. opn. of Chin, J., *post,* at pp. 548-550) rests on the legal assumption they play a role in deciding employee status for wage claims, an assumption we decline to embrace, leaving for another day resolution of its validity. (See *Martinez*[, *supra,*] 49 Cal.4th at pp. 64, 73.)" (*Ayala, supra,* 59 Cal.4th at p. 532, fn. 3.)

certification when an applicable standard (there, the common law test for an employment relationship) appears to implicate individualized factual issues that might make litigation of the case as a class action unmanageable. (See *Ayala, supra,* 59 Cal.4th at pp. 537-538.) In *Martinez*, on the other hand, the Court discussed at length the impact of the IWC regulatory scheme on whether an employment relationship had arisen between a group of farm laborers and the merchants who bought the produce from the farmer who employed the laborers. (See *Martinez, supra,* 49 Cal.4th at pp. 52-57.) Although the Court concluded the produce merchants were not joint employers of the farm laborers, it made clear IWC wage orders are to be accorded the same weight as statutes and the applicable wage order defines the employment relationship for wage and hour claims within its scope. (*Id.* at pp. 52, 61.)

The farm laborers in *Martinez* sued the produce merchants under section 1194, which creates a private right of action on behalf of employees seeking to recover unpaid wages.[7] Because this Labor Code section does not specify who is liable under its terms, the Supreme Court analyzed the legislative history associated with its adoption. In short, section 1194 was part of 1913 legislation that also created the IWC, which was empowered to issue wage orders governing specific industries and occupations. (*Martinez, supra,* 49 Cal.4th at pp. 54-56; see also *Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at p. 1026 ["[n]early a century ago, the Legislature responded to the problem of inadequate wages and poor working conditions by establishing the IWC and delegating to it the authority to investigate various industries and promulgate wage orders fixing for each industry minimum wages, maximum hours of work, and conditions of labor"].) Since 1913, the Court observed, "the Legislature has 'restated the commission's responsibility in even broader terms' [citation], charging the IWC with the

---

[7]    Section 1194, subdivision (a), provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

'continuing duty' to ascertain the wages, hours and labor conditions of 'all employees in this state,' to 'investigate [their] health, safety, and welfare,' to 'conduct a full review of the adequacy of the minimum wage at least once every two years' [citation], and to convene wage boards and adopt new wage orders if the commission finds 'that wages paid to employees may be inadequate to supply the cost of proper living' [citations]." (*Martinez,* at p. 55.) The Court concluded, "[A]n examination of section 1194 in its full historical and statutory context shows unmistakably that the Legislature intended to defer to the IWC's definition of the employment relationship in actions under the statute." (*Id.* at p. 64.)[8]

The IWC wage orders share common definitions and schemes, including the definition of employment: Like all other wage orders, Wage Order No. 9, applicable to the transportation industry, defines the word "employ" as "to engage, suffer, or permit to work." (Cal. Code Regs., tit. 8, § 11090, subd. 2(D).) An employer is defined as any person "who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." (*Id.*, § 11090, subd. 2(F).) This is the same language examined by the Supreme Court in *Martinez.* (See *Martinez, supra,* 49 Cal.4th at p. 64.) Parsing this language in light of the IWC's statutory purposes, *Martinez* concluded that "[t]o employ, then, under the IWC's definition, has three alternative definitions. It means: (a) to exercise control over the

---

[8]    The Legislature defunded the IWC in 2004; however, its wage orders remain in effect. (*Peabody v. Time Warner Cable, Inc.* (2014) 59 Cal.4th 662, 667, fn. 3.) There are currently 18 wage orders. Sixteen relate to specific industries or occupations: manufacturing; personal service; canning, freezing and preserving; professional, technical, clerical, mechanical and the like; public housekeeping; laundry, linen supply and dry cleaning; mercantile; product handling after harvest (covering commercial packing sheds); transportation; amusement and recreation; broadcasting; motion picture; preparation of agricultural products for market (on the farm); agricultural; household; and construction, drilling, logging and mining. There is also one general minimum wage order, and one order implementing the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999. (See Cal. Code Regs., tit. 8, §§ 110al.00-11170; *Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at p. 1026; *Martinez*, *supra*, 49 Cal.4th at p. 57.)

wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." (*Ibid.*)

As is evident from the *Martinez* Court's analysis, it is not inappropriate to rely on the common law standard to determine whether an employment relationship exists for purposes of liability under section 1194. However, *Martinez* recognized that limiting plaintiffs to that test in actions under section 1194 and "ignoring the rest of the IWC's broad regulatory definition would substantially impair the commission's authority and the effectiveness of its wage orders." (*Martinez, supra,* 49 Cal.4th at p. 65.) "One cannot overstate the impact of [this] holding on the IWC's powers. Were we to define employment exclusively according to the common law in civil actions for unpaid wages we would render the commission's definitions effectively meaningless." (*Ibid.*)

*Borello* in many ways foreshadowed *Martinez's* embrace of the IWC definition. There, in holding that cucumber sharefarmers were not independent contractors excluded from coverage under the Workers' Compensation Act, the Supreme Court explained, "The distinction between independent contractors and employees arose at common law to limit one's vicarious liability for the misconduct of a person rendering service to him." (*Borello, supra,* 48 Cal.3d at p. 350.) As a matter of fairness to the employer, his or her liability was premised on the extent to which the employer had the right to control the details of the employee's service. (*Ibid.*) In the wake of 20th century industrialization, versions of this "control" test were imported into legislation designed to protect workers as an express or implied limitation on coverage. (*Ibid.*) Courts struggling to apply this limited test to "the infinite variety of service arrangements" eventually embraced the cluster of secondary indicia discussed above to guide resolution of these questions. (*Ibid.*, citing, inter alia, Rest.2d Agency, § 220; *Tieberg v. Unemployment Ins. Appeals Board* (1970) 2 Cal.3d 943, 949-950; *Empire Star Mines Co. v. California Employment Com.* (1946) 28 Cal.2d 33, 43.) *Borello*, however, recognized that the control test arose to meet the needs of employers and was not focused on protection of their employees: To accommodate this conceptual distinction, the Court instructed that the common law "'control-of-work-details' test for determining whether a person rendering services to

11

another is an 'employee' or an excluded 'independent contractor' must be applied with deference to the purposes of the protective legislation.  The nature of the work, and the overall arrangement between the parties, must be examined to determine whether they come within the 'history and fundamental purposes' of the statute."  (*Borello,* at pp. 353-354.)

Martinez, in effect, fills the gap between the common law employer-focused approach and the need for a standard attuned to the needs and protection of employees.  As the Court recognized, the IWC wage orders provide an employee-centric test gauged to mitigate the potential for employee abuse in the workplace:  "[T]he scope of the IWC's delegated authority is, and has always been, over wages, hours and working conditions. [Citations.]  For the IWC to adopt a definition of 'employer' that brings within its regulatory jurisdiction an entity that controls any one of these aspects of the employment relationship makes eminently good sense."  (*Martinez, supra,* 49 Cal.4th at p. 59.)  "For a court to refuse to enforce such a provision in a presumptively valid wage order [citation] simply because it differs from the common law would thus endanger the commission's ability to achieve its statutory purposes."  (*Id*. at p. 65.)

4. *The Trial Court Did Not Err in Allowing Certification Based on the IWC Definition of Employee as to Claims Falling Within the Scope of Wage Order No. 9*

Dynamex contends the superior court's ruling is an outlier and insists no other court has resorted to the first two prongs of the IWC definition of employee in certifying a class in a wage and hour case.  Under this "extreme view," Dynamex asserts, "independent contractors will no longer exist in California."

Contrary to Dynamex's overblown rhetoric, the decisions it cites as rejecting application of *Martinez* in fact confirm its broad sweep.  In *Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, for instance, the court applied the IWC definition of employment because "*Martinez* governs our determination of the issues in the current case.  [Citations.]  *Martinez* teaches that, in actions under section 1194 to recover unpaid wages, an IWC wage order governing a subject industry defines the employment

12

relationship, and thus who may be held liable—as an employer—for unpaid wages." (*Futrell,* at p. 1429.) Although utilizing the IWC definition, the court affirmed summary judgment in favor of the payroll company because it did not exercise control over the plaintiff's wages, hours or working conditions; did not have the power to cause or prevent him from working; and did not control any aspect of his job performance. (*Id.* at pp. 1431-1435; see also *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1187-1190 [applying *Martinez* to find defendant was not an employer even though no wage order involved]; *Guerrero v. Superior Court* (2013) 213 Cal.App.4th 912, 945-952 [applying *Martinez* to find public agency exercised effective control over provider wages; trial court erred in determining as a matter of law public agency was not an employer for purposes of IWC wage order].)

Similarly, in *Sotelo v. Medianews Group, Inc.* (2012) 207 Cal.App.4th 639, a wage and hour class certification appeal, the appellate court recognized "the trial court should not have limited itself to the test for a common law employment relationship because [the plaintiffs'] third cause of action, for violation of minimum wage and overtime laws, comes under Labor Code section 1194." (*Id.* at pp. 661-662.) The *Sotelo* court concluded this error was harmless in light of the trial court's determination "that, even assuming that putative class members were employees, common issues did not predominate in the third cause of action." (*Id.* at p. 662.) Echoing *Sotelo*'s analysis but reaching the opposite conclusion, the court in *Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129 found common issues of fact warranted certification of a class of telecommunications workers under either the *Borello* or *Martinez* standard. With respect to seven causes of action—six of which were not based on section 1194—the court interpreted *Martinez* to apply to all claims brought under an IWC wage order. (*Bradley,* at p. 1146.) Presaging the opinion in *Ayala*, the court explained: "Under [class certification] analysis, the focus is not on the particular task performed by the employee, but on the global nature of the relationship between the worker and the hirer, and whether the hirer or the worker had the right to control the work. The undisputed evidence showed Networkers had consistent companywide policies applicable to all employees

13

regarding work scheduling, payments, and work requirements.  Whether those policies created an employer-employee relationship, as opposed to an independent contractor relationship, is not before us.  The critical fact is that the evidence likely to be relied upon by the parties would be largely uniform throughout the class." (*Bradley*, at p. 1147.)[9]

Other decisions cited by Dynamex arose in contexts not subject to IWC wage orders and thus outside the scope of *Martinez.  Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, for example, was a tort action that applied the common law test to the question whether the tortfeasor was an employee or independent contractor of the defendant.  In *Angelotti v. The Walt Disney Co.* (2011) 192 Cal.App.4th 1394 a stuntman sued Disney for injuries he had received on the set.  The court affirmed summary judgment in favor of Disney after finding the plaintiff was an employee and that workers' compensation was his exclusive remedy.  Neither of these cases involved a wage and hour claim within the scope of an IWC work order.[10]

---

[9]     Dynamex cites several federal decisions that apply *Borello*'s common law test in determining whether an employee relationship exists in a misclassification lawsuit without discussing the impact of *Martinez*.  (See, e.g., *Alexander v. FedEx Ground Package System, Inc.* (9th Cir. 2014) 765 F.3d 981 [2014 U.S. App. Lexis 16585]; *Ruiz v. Affinity Logistics Corp.* (9th Cir. 2014) 754 F.3d 1093.)  We, of course, are not bound by federal interpretations of California law.

[10]     Dynamex also cites *Monarrez v. Automobile Club of Southern California* (2012) 211 Cal.App.4th 177, notwithstanding that review had been granted by the Supreme Court on February 13, 2013 (S207726), more than four months before it filed its writ petition in this court.  (See Cal. Rules of Court, rules 8.1105(e)(1) [unless otherwise ordered, an opinion is no longer considered published if the Supreme Court grants review], 8.1115(a) [with limited exceptions, a Court of Appeal opinion that is not certified for publication "must not be cited or relied on by a court or a party in any other action"].)  In any event, *Monarrez*, like *Bowman*, was a tort action; the issue was whether a tow truck company assisting the plaintiff, who was injured by a hit-and-run driver while being aided by the tow truck operator, was the actual or ostensible agent of the Automobile Club of Southern California or whether it was an independent contractor.  The Supreme Court ordered briefing in *Monarrez* deferred pending its decision in *Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, which held the defendant franchisor was entitled to summary judgment on plaintiff's claim that it was vicariously liable for tortious conduct by a supervising employee of a franchisee.

14

Dynamex also cites *Arnold v. Mutual of Omaha Ins. Co.*(2011) 202 Cal.App.4th 580 (*Arnold*) to demonstrate courts have rejected *Martinez*. In *Arnold* a nonexclusive insurance agent for Mutual of Omaha sued the company seeking unpaid employee entitlements under the Labor Code. (*Id.* at p. 582.) Mutual of Omaha moved for summary judgment on the ground she was an independent contractor rather than an employee under the common law test. (*Id.* at p. 583.) The agent contended section 2750 defined "employee" for purposes of her rights under section 2802.[11] The appellate court rejected that argument and affirmed the trial court's order granting summary judgment, relying in part on the application of the common law test to a claim under section 2802 in *Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1,[12] as well as its own conclusion that "section 2750 does not supply . . . a definition of 'employee' that is clearly and unequivocally intended to supplant the common law definition of employment for purposes of section 2802." (*Arnold,* at p. 587.) As the court noted, "when a statute refers to an 'employee' without defining the term, courts have generally applied the common law test of employment to that statute." (*Id.* at p. 586.)

According to Dynamex, *Arnold* "referenced *Martinez* elsewhere in its opinion, but then determined that 'the trial court correctly determined the common law [*Borello*] test

---

[11] Section 2802, subdivision (a), provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

Section 2750 provides: "The contract of employment is a contract by which one, who is called the employer, engages another, who is called the employee, to do something for the benefit of the employer or a third person."

[12] *Estrada*, decided by our colleagues in Division One of this court, was written nearly three years before the Supreme Court's decision in *Martinez*. Applying *Borello*, *Estrada* concluded the plaintiff FedEx drivers were employees rather than independent contractors: The court referred to the result as the "if it looks like a duck, walks like a duck, swims like a duck, and quacks like a duck, it is a duck" test. (*Estrada v. FedEx Ground Package System, Inc., supra,*154 Cal.App.4th at p. 9.) We have little doubt, if decided today, the *Estrada* court would follow *Martinez* and find the FedEx drivers were employees within the meaning and scope of Wage Order No. 9.

of employment was applicable for purposes of Section 2802.' The *Arnold* Court was clearly aware of *Martinez*." However, the sole "reference" to *Martinez* in *Arnold* is the court's citation of *Reynolds v. Bement* (2005) 36 Cal.4th 1075 as "disapproved" by *Martinez* "on another ground." There is no discussion of *Martinez* or the IWC definition because the plaintiff apparently did not contend she was covered by a wage order. Indeed, IWC wage orders exempt from coverage "persons employed in administrative, executive, or professional capacities"—persons like the plaintiff—with respect to certain mandates, including the right to reimbursement of particular expenses. (Cal. Code Regs., tit. 8, § 11040, subds. 1(A), 8 & 9.)[13] Absent an applicable wage order, *Arnold* is not authority for the contention the common law standard of employment governs claims in this case, which do involve a controlling wage order. (See *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195 [language in a judicial opinion is to be understood in accordance with the facts and issues before the court; an opinion is not authority for propositions not considered].)

In sum, Dynamex has failed to convince us the superior court erred as a matter of law in denying its motion to decertify the class with respect to claims falling within the scope of Wage Order No. 9. The court properly applied *Martinez* in determining plaintiffs were employees within the meaning of that wage order.[14]

---

[13]     Wage Order No. 4-2001 regulates wages, hours, and working conditions in professional, technical, clerical, mechanical and similar occupations but contains the same exemption for "persons employed in administrative, executive, or professional capacities" found in every wage order.

[14]     Dynamex contends, both in its briefs and at oral argument, that the holding in *Martinez* should be limited to determining whether an entity is a joint employer—that is, whether an individual who is unquestionably an employee of one entity may hold another entity liable for wages or other employment benefits not provided by the primary employer. Although that was the precise factual context in which the issue arose in *Martinez*, nothing in the case supports a limitation of this nature; and, as the foregoing discussion demonstrates, no other court has adopted it.

16

5. *The Trial Court Should Reevaluate in Light of* <u>Ayala</u> *Whether Class Certification Remains Appropriate for Any Claims Falling Outside Wage Order No. 9*

Lee and Chevez's second amended complaint contains five causes of action, all of which are alleged to fall within the scope of Wage Order No. 9: (1) unfair business practices under Business and Professions Code section 17200 arising from violations of various Labor Code and wage order provisions; (2) unlawful business practices under the same section; (3) failure to pay overtime compensation in violation of section 1194 and other provisions; (4) failure to provide accurate wage statements in violation of section 226; and (5) failure to fully compensate for business expenses in violation of section 2802. The trial court did not distinguish among these claims in granting the motion for class certification.

Notwithstanding the legal conclusion alleged in their pleading, it is by no means clear at this point in the litigation whether all of Lee and Chevez's claims under section 2802 (and the related claims for unfair or unlawful business practices), if proved, would be violations of Wage Order No. 9. To be sure, the wage order contains several provisions that arguably relate to the section 2802 claim: Employers may not deduct from the employee's wages or require reimbursement for "any cash shortage, breakage, or loss of equipment" (Cal. Code Regs., tit. 8, § 11090, subd. (8)); the employer must provide and maintain uniforms worn by the employee as a condition of employment (*id.,* § 11090, subd. 9(A)); and necessary tools and equipment shall be provided and maintained by the employer (*id.,* § 11090, subd. 9(B)). To the extent the reimbursement sought by Lee and Chevez in their section 2802 claim are confined to these items, the IWC definition of employee must be applied pursuant to *Martinez*, as discussed in the preceding section of our opinion.

Claims for reimbursement for the rental or purchase of personal vehicles used in performing delivery services, even if viable under section 2802, appear to be outside the ambit of Wage Order No. 9. (See *Estrada v. FedEx Ground Package System, Inc., supra,* 154 Cal.App.4th at pp. 21-25.) If so, the determination whether a class is properly

17

certified to pursue those claims must be made under the common law definition of employee as discussed in *Ayala* and *Borello*. That evaluation is most appropriately made by the superior court in the first instance.

## DISPOSITION

The petition is granted in part. Let a peremptory writ of mandate issue directing respondent superior court to reevaluate in light of *Ayala, supra*, 59 Cal.4th 522 and *Duran, supra*, 59 Cal.4th 1, if relevant, whether class certification remains appropriate for any claims falling outside Wage Order No. 9. In all other respects the petition is denied. The parties are to bear their own costs in this proceeding.


PERLUSS, P. J.


We concur:



WOODS, J.



ZELON, J.


18